# EXHIBIT E

# KIRTON | McCONKIE

Jarod R. Marrott
jmarrott@kmclaw.com
801.323.5937

October 3, 2016

**VIA ELECTRONIC MAIL**
Stephen R. Barrese
Dilworth & Barrese, LLP
1000 Woodbury Road, Suite 405
Woodbury, New York 11797
sbarrese@dilworthbarrese.com

RE:     SMARTSHAKE

Dear Mr. Barrese:

I represent USANA Health Sciences, Inc. in its intellectual property matters, and have been asked to respond to your letter dated July 28, 2016. Please know that USANA respects the rights of others and would never intentionally seek to confuse consumers or trade upon the goodwill of another company. USANA selected the name "MySmart" to function together with a variety of descriptive words in conjunction with a variety of its products (e.g. "MySmart Bar" used with protein bars). Any similarity with your client's trademarks occurred without knowledge of your client's trademarks or intention to trade on any actual or perceived similarity to your client's marks.

The term "Shake" can be used as a verb that is descriptive of shaker bottles and similar products of the type sold by your client under its trademarks; and it is regularly used in trademarks attached to such items (see, e.g., Registration Nos. 4890937 (TWISTSHAKE), 4423866 (ISHAKE), 4479049 (SHAKE & GO), and 7404842 (FIFTY SHAKES). The word "Shake" is also used as a noun generic or descriptive of my client's protein products, which even you described in your letter as "protein shakes." Thus, there is little trademark significance associated with the use of the term SHAKE with either of our clients' products. As you are probably aware, the term "Smart" is a heavily-used trademark term, with over 12,000 live combined word mark hits on the U.S. Trademark Office database of registered and applied-for marks. It therefore appears that there is minimal source-identifying significance that should be applied to use of the word SMART (see, e.g., Registration Nos. 2026241 (SMART CHOICE), 3599980 (SMART SOURCE), 3793693 (SMART BOTTLE), 3872359 (SMARTUBE), 4522165 (SMART LIVING), 4693814 (SMART DISC), 3513554 (SMART PORTION), 4932804 (SMART HOME ESSENTIALS FOR LIVING), 2199487 (SMART&FINAL), 3910895 (SMART + SIMPLE ORGANIZATION), 4531335 (SMARTPAN), and 4573217 (SMARTLOC)). Thus, while we recognize that your client has obtained registration of its SMARTSHAKE family of marks, we believe that consumers are not likely to be confused by my client's use of its differing MySmart family of marks in conjunction with descriptive words such as SHAKE applied to protein shakes.

ATTORNEYS AT LAW
www.kmclaw.com

Kirton McConkie Building, 50 East South Temple, Salt Lake City, UT 84111    801.328.3600 tel    801.321.4893 fax
Key Bank Tower, 36 South State Street, Suite 1900, Salt Lake City, UT 84111    801.328.3600 tel    801.321.4893 fax
Thanksgiving Park Four, 2600 W Executive Parkway, Suite 400, Lehi, UT 84043    801.426.2100 tel    801.426.2101 fax

Stephen R. Barrese
October 3, 2016
Page 2

    Furthermore, we believe it is unlikely that consumers will be confused by the source of our clients' respective products. My client's products are prominently labeled with my client's USANA mark, making clear the source of its products. Furthermore, the parties' respective marks differ in that the USANA MySmart product line includes a distinguishing "My" at the start of the mark, where it is most likely to be recognized by consumers as distinguishing. Furthermore, with respect to the USANA MySmart$^{TM}$ Shake BlenderBottle sold by my client, we further note that the printing on the product clearly separates the "MySMART" from the "SHAKE," further reducing the likelihood that consumers will inadvertently believe there is any association between our clients' respective products.

    In light of the above considerations and the evidence currently available to us, we therefore are of the belief that my client's actions are not likely to confuse consumers or dilute your client's trademarks.

    We note that you have alleged that my client's actions have caused confusion among consumers, and we would be interested to receive more detail in relation to any incidents of actual confusion and are willing to work with you and your client to take action to reduce and prevent instances of actual confusion.

    Like your client, my client is committed to resolving this matter amicably. We remain open to receiving additional information from you relating to alleged instances of actual confusion and to readdressing these issues based on any additional information you can provide. Furthermore, we recognize that you have suggested the possibility of a resolution of these issues with a business relationship between our respective clients. We remain open to considering any proposal that you have along those lines.

    Sincerely yours,

    **KIRTON | M<sup>c</sup>CONKIE**

    Jarod R. Marrott

JRM:ADS