# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
DEVPAT AB,                               :

                        :

                Plaintiff,     :

        v.                       :

                         :

USANA HEALTH SCIENCES, INC.,     :

                         :

             Defendant.    :

------------------------------------------------------------ X

**Civ. Action No.: 17-cv-2858**

FILED UNDER SEAL

## PLAINTIFF DEVPAT AB'S OPPOSITION TO DEFENDANT USANA'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE

Richard C. Pettus
Jeffrey P. Dunning
Brooke E. Hazan (*pro hac vice* pending)
Elana B. Araj
**GREENBERG TRAURIG, LLP**
MetLife Building
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200
Email: pettusr@gtlaw.com

*Counsel for DevPat AB*

Dated: July 24, 2018

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.    BACKGROUND FACTS .......................................................................................2

    A.    The Named Parties...................................................................................2
    B.    USANA's Substantial Business Ties to New York and this Judicial
        District.....................................................................................................3
    C.    The Substantial Events Giving Rise to this Action that Occurred in
        New York and/or this Judicial District ...................................................5
    D.    The Dismissed First-Filed Utah Action..................................................6

III.    ARGUMENT ..........................................................................................................7

    A.    USANA's Venue Motion is Frivolous and Should be Denied...........................7

        1.    Legal Standard ......................................................................7
        2.    The Events Giving Rise to this Action Occurred in this Judicial
            District and were Clearly Pled in DevPat's Complaint .........................7

    B.    USANA's Motion to Transfer this Case Back to the Utah Court That
        Dismissed it for "Procedural Fencing" is Also Frivolous...............................10

        1.    Legal Standard ....................................................................11
        2.    The Proposed Utah "Transferee" Court Already Dismissed
            USANA's Trademark Invalidity Claims Due to Its "Procedural
            Fencing" Tactics ..................................................................11
        3.    None of the Factors Favor Transfer .....................................12

    C.    DevPat's Request For Attorneys' Fees............................................................20

IV.    CONCLUSION.....................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Cameron Int'l Trading Co., Inc. v. Hawk Importers, Inc.*,
  No. 03-cv-02496-JS, 2010 WL 4568980 (E.D.N.Y. Nov. 2, 2010) ...................................20

*Cartier v. Micha, Inc.*,
  No. 06-cv-4599-DC, 2007 U.S. Dist. LEXIS 29785, (S.D.N.Y. Apr. 20, 2007) .........7, 9, 10

*DealTime.com Ltd. v. McNulty*,
  123 F.Supp.2d 750 (S.D.N.Y. 2000 .......................................................................... 11-13, 17

*DO Something, Inc. v. San Diego Rock Church Inc.*,
  No. 11-cv-6462-AKH, 2012 U.S. Dist. LEXIS 56805, (S.D.N.Y. Apr. 19. 2012) ....1, 7, 8, 9

*ESPN, Inc. v. Quicksilver, Inc.*,
  581 F.Supp.2d 542 (S.D.N.Y. 2008) ...................................................................................15

*Honda Associates v. Nozawa Trading, Inc.*,
  374 F.Supp. 886 (S.D.N.Y. 1974) .......................................................................................10

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*,
  138 F. Supp. 2d 449 (S.D.N.Y. 2000) ...................................................................................7\

*It's a 10, Inc. v. PH Beauty Labs, Inc.*,
  718 F.Supp.2d 332 (S.D.N.Y. 2010) ...................................................................................15

*Kiss My Face Corp. v. Bunting*,
  No. 02-cv-2645, 2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003) .......................................17

*Linzer v. EMI Backwood Music Inc.*,
  904 F.Supp. 207 (S.D.N.Y. 1995) .......................................................................................11

*Medien Patent Verwaltung AG v. Warner Bros Ent., Inc.*,
  749 F.Supp.2d 188 (S.D.N.Y. 2010) ...................................................................................18

*POLO Fashions, Inc. v. Get Off Your High Horse, Inc.*,
  No. 83-cv-7437-SWK, 1984 U.S. Dist. LEXIS 23033 (S.D.N.Y. Oct. 4, 1984) ................10

*Reliance Ins. Co. v. Polyvision Corp.*,
  474 F.3d 54 (2d Cir. 2007) ...................................................................................................7

*Schieffelin & Co. v. Jack Co.*,
  725 F.Supp. 1314 (S.D.N.Y. 1989) .....................................................................................10

*Steadfast Ins. Co. v. Fid. Nat'l Title Ins. Co.*,
  No. 17-cv-03508-LAK-DF, 2018 U.S. Dist LEXIS 16885 (S.D.N.Y. Jan. 30, 2018) .........16

**REDACTED**

*Virgin Enters. v. Am. Longevity*,
No. 99-cv-9854-CSH, 2001 U.S. Dist. LEXIS 2046 (S.D.N.Y. Feb. 28, 2001) ........... 16-17

**Statutes**

28 U.S.C. § 1391(b)(2) ............................................................................................... 7

iii

## I.    INTRODUCTION

Plaintiff DevPat AB ("DevPat") submits this opposition to Plaintiff USANA Health Sciences, Inc.'s ("USANA") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3), or in the alternative, to transfer venue to the District of Utah (D.I.33) ("Motion").

The District of Utah is the same court which recently exercised its discretion and declined to hear USANA's first-filed action based on its procedural fencing tactics. And the current Motion is yet another example in USANA's series of bad faith tactics that are apparently designed to increase the litigation burdens on DevPat while USANA continues to wilfully infringe the asserted trademarks. USANA's Motion ignores and fails to contradict the well-pled allegations in the Complaint that establish and describe how this action arose as a direct result of the advertising and promotion of the infringing products in this Judicial District by and through its "Trusted Partner," the New York-based *The Dr. Oz Show*.  (D.I.1 at ¶¶38 and 7, 34-35 and Ex.C.)  Instead, USANA relies on multiple misrepresentations which not only warrant denial of its Motion, but also grant of DevPat's legal fees in having to defend itself against this frivolous Motion and the associated expedited discovery it provoked.[1]

In arguing improper venue, USANA ignores the well-settled law holding that venue is proper in each jurisdiction where trademark infringement has occurred. *See, e.g., DO Something, Inc. v. San Diego Rock Church, Inc.*, 2012 U.S. Dist. LEXIS 56805, at *8 (S.D.N.Y. Apr. 19, 2012) (quoting *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 459 (S.D.N.Y. 2000)).  On this, there can be no dispute that USANA has made substantial sales of the infringing "MYSMARTSHAKE" products in New York (including this Judicial District) and, in fact, USANA admits that 5% of its total sales of the infringing product were made in

---

[1] During the June 26, 2018 hearing before the Court, USANA told the Court that it had already drafted this Motion, which included dismissal under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. After DevPat requested expedited discovery on that issue, however, USANA dropped its personal jurisdiction challenge and, thereby conceded that this Court has personal jurisdiction over it.

New York. (D.I.37.) The undeniable facts also belie USANA's attempts to downplay the nature and extent of its marketing/promotion/sales activities directed at this Judicial District as limited to a *single* instance on the New York-based *The Dr. Oz Show*.  The truth is that USANA:

- formed a "Trusted" partnership with New York-based *The Dr. Oz Show* that continues to enable the Infringing Products to reach **millions of consumers** (Araj Decl., Ex. 5) and for which USANA has ▮▮▮▮▮▮▮▮▮▮ (i.e., which is more than DevPat's total U.S. sales during that same timeframe) (*id.* at Exs. 11-13);

- has nearly ▮▮▮▮▮ active distributors in New York who market and sell USANA's products, including the Infringing Products bearing the MYSMARTSHAKE mark (*id.*, Ex. 2 at 7-8); and

- has New York-specific ***Twitter*** (@USANA_NY) and ***Facebook*** (@Usana.NewYork) accounts (*id.* at Exs. 3-4) that directly target New Yorkers.

USANA's transfer request is more of the same. USANA argues that its employees will be inconvenienced but fails to inform the Court that its employees regularly travel to this Judicial District to carry out its business activities, including with respect to the New York-based *The Dr. Oz Show*, and/or that USANA's net sales in 2017 were over $1 billion (i.e., approximately 100 times more than DevPat). (*Id.*, Ex. 1 at 4.) Even worse, USANA blatantly misstates the actual holding of the Utah Court to which it seeks transfer.

DevPat respectfully submits that the Utah Court has already recognized USANA's pattern of bad faith negotiations and litigation tactics, and asks this Court to do the same, by denying USANA's Motion and awarding legal fees to DevPat in having to oppose it.

## II.   **BACKGROUND FACTS**

### A.   **The Named Parties**

DevPat is a Swedish company (D.I.1 at ¶1; Bergstrom Decl. at ¶2) and the sole owner of three valid and subsisting federal trademark registrations for SMARTSHAKE® ("the SMARTSHAKE® Trademark"), all of which are registered on the U.S. Patent and Trademark Office's Principal Register (D.I.1 at ¶11.)  Those registrations include U.S. Registration Nos. 4,199,080; 4,871,259; and 4,929,699.  (*Id.*, Ex. A).  Since 2010, DevPat has manufactured, shipped, promoted, offered for sale and sold in the United States a line of drinking bottles,

2

shakers, and food containers under the distinctive SMARTSHAKE® brand. (D.I.1 at ¶¶13-25.) DevPat prominently and consistently displayed and continues to display the SMARTSHAKE® Trademark on these products. (*Id.*)

When DevPat employees travel to the United States for business, they typically fly on a direct, non-stop flight from Stockholm, Sweden to New York.[2] (Bergstrom Decl. at ¶3.) DevPat is unaware of employees having travelled to Utah to conduct business and there are no direct flights to Utah from Sweden. (*Id.* at ¶4.) DevPat does not own or lease any property in Utah. In addition, DevPat does not have any documents related to this action located in Utah. (*Id.* at ¶5.)

USANA is a Utah corporation that manufactures, promotes, and sells diet and energy products. (D.I.1 at ¶3.) According to its Annual Report, USANA is:

> **One of the largest** publicly held direct-selling nutrition, personal health and wellness companies in the world. In 2017, [it] generated **$1.047 billion** in net sales from more than 565,000 active customers worldwide.

(Araj Decl, Ex. 1 at 4.) (Emphasis added.)

One of USANA's product brands includes protein shake mixes and bottles, which are sold, worldwide, including in the state of New York and this Judicial District, under the name MYSMARTSHAKE ("Infringing Products"). (D.I.1 at ¶¶26-29.)

**B.     USANA's Substantial Business Ties to New York and this Judicial District**

While USANA's principal place of business may be located in Utah, it conducts substantial business in New York and this Judicial District, including at least the following advertising and promotion activities and direct business relationships with numerous relevant third-party witnesses:

- USANA has New York-specific Twitter and Facebook accounts (Araj Decl., Exs. 4-5);

---

[2] New York, New York, Chicago, Illinois, and Los Angeles, California are the only cities in the United States to which individuals can flight non-stop from Stockholm, Sweden.

3

**REDACTED**

- USANA has approximately ████ active New York-based distributors and currently has ████ active preferred customers in New York who are not only involved with the sale of the Infringing Products (*id.*, Ex. 2 at 7-8, Ex. 23) but who are also responsible for marketing and selling USANA's products in the State of New York and in this Judicial District and to whom USANA directs extensive training resources and activities (*id.*, Ex. 19; Motion at 2);

- USANA has extensive ties to ██████████████████████████ ████████████, and others at SONY Pictures Television Productions. (Araj Decl., Exs. 15-16.)

In addition, on its website USANA touts its status as "a Trusted Partner and Sponsor of *The Dr. Oz Show*":

- "There's **so much impact** in those few words.  Because they mean one thing— USANA is about to become **a household name**."

- "Each month, **millions of people** will be introduced to different USANA products on *The Dr. Oz Show*."[3]

- "Viewers will also see USANA commercials **every time they tune in**."

- "We'll be **prominently featured** on the show's website."

- "We're talking about **unprecedented visibility** for our brand."

- "Being a Trusted Partner and Sponsor puts us in **an exclusive club** . . . we're the **only one in our industry to hold the title**."

(*Id.*, Ex. 5.) (emphasis added.)  In the past five years, alone, USANA has paid over $50 million in connection with that "Trusted Partnership" with the New York-based Dr. Oz—i.e., more than DevPat's total U.S. sales during that same timeframe. (*Id.*, Exs. 11-13.)  In its 2017 Annual Report, USANA also indicated how its products are sold via the New York-maintained website of *The Dr. Oz Show*:

> [W]e renewed our relationship with Dr. Mehmet Oz as a Trusted Partner and Sponsor of *The Dr. Oz Show* . . . Under this partnership, USANA products are

---

[3] USANA's ████████████████████████████████████████

████████████████ (*Id.*, Ex. 13 at 3.)  Thus, each time USANA has a product featured on the New York-based *The Dr. Oz Show*, ████████████████████████████████████████ ████████████████████ (*Id.*)

4

regularly featured on *The Dr. Oz Show* and **viewers of the show are able to purchase USANA products via a direct link on *The Dr. Oz Show* website**.

(*Id.*, Ex. 1 at 6.) (Emphasis added.)



. (*Id.*, Ex. 2 at 6-7, 9-10.)

### C.   The Substantial Events Giving Rise to this Action that Occurred in New York and/or this Judicial District

In or around June of 2016, DevPat became aware of USANA's unauthorized use of the MYSMARTSHAKE mark, when the Infringing Products were featured on an episode of the New York-based *The Dr. Oz Show* that was produced live in New York City before over 100 audience members (all of which were given free samples of the Infringing Products for attending the show in New York). (D.I.1 at ¶38.)  Shortly after the Infringing Products were promoted on the New York-based *The Dr. Oz Show*, on or about June 15, 2016, Mr. Tony Giovanini, DevPat's Vice President of Sales, Americas, received a telephone call from a consumer who stated that she saw **DevPat's SmartShake products** on such show and requested a free sample.  (*Id., Ex. C*).  It was this actual confusion between DevPat's and USANA's products which caused DevPat to contact USANA about the infringement issue. (*Id.*, Exs. C-D.)

The infringing activities associated with *The Dr. Oz Show* did not stop there.  USANA and Dr. Oz proceeded to promote the Infringing Products through a Sweepstakes that prominently displayed on the show's New York-maintained website, where consumers could enter to win free samples of the Infringing Products.  (Araj Decl., Ex. 6.)  Over the time that the Dr. Oz Sweepstakes was run, it lured over ████ consumers to enter to win free samples of at least a MYSMARTSHAKE Protein Base and a MYSMARTSHAKE Flavor Optimizer.

5

(*Id.* at Exs. 6, 17). The total amount of free samples given away to 1,000 winners of the MYSMARTSHAKE Sweepstakes had an aggregate value of over $47,000. (*Id.*, Ex. 8). Promotion and sales of the Infringing Products through the New York-based *The Dr. Oz Show* continues to this day through recurring views of the video segment that is still posted on the show's website and which USANA's website directly links to. (*Id.*, Ex. 18).

USANA continues to sell the Infringing Products to customers in New York and/or this Judicial District via its approximately ████ New York-based distributors and over ███ preferred customers. (*Id.*, Ex. 2 at 7-8.)  USANA has also admitted that approximately 5% of its total overall sales of the Infringing Products sold in the United States occurred in New York (D.I.37 at 2), including to at least ██ retail customers in the state of New York.  (Araj Decl., Ex. 2 at 7-8.)

### D.    The Dismissed First-Filed Utah Action

After becoming aware of the Infringing Products, DevPat's counsel notified USANA of its SMARTSHAKE® trademark and demanded that USANA cease and desist use of the term SMARTSHAKE.  (D.I.1, Ex. D.)  Negotiations between the parties ensued.  On February 23, 2017, USANA's in-house counsel expressly told DevPat's New York-based counsel, Mr. Stephen Barrese, "I'll get back to you as soon as I can."  (Araj Decl., Ex. 7.)  USANA, however, never got back to DevPat, and instead filed a declaratory judgment action against DevPat **the very next day** (*Id.*, Ex. 8) ("the Utah Action").  In response, DevPat was forced to move to dismiss the Utah Action and lay out USANA's bad faith litigation conduct of racing to the courthouse despite representing to DevPat that negotiations were ongoing. (*Id.*, Ex. 9). DevPat subsequently filed this affirmative action, which this Court stayed pending the Utah court's decision on DevPat's motion to dismiss. (D.I.23.) The Utah Court granted DevPat's motion to dismiss on June 5, 2018.  (Araj Decl., Ex. 10).  In doing so, the Utah Court exercised its discretion not to hear USANA's case, including the invalidity claims that will be part of this

6

action, and made clear that "[DevPat's] Motion to Dismiss would have been granted even if there was an 'actual controversy' between the parties," due to USANA's bad faith filing of the declaratory action. (*Id*. at 12, 16 at n. 85).

## III.   ARGUMENT

### A.   USANA's Venue Motion is Frivolous and Should be Denied

#### 1.   Legal Standard

Under 28 U.S.C. § 1391(b)(2) venue is proper where "a substantial part of the events . . . giving rise to the claim occurred." *Id.*  In determining whether venue is proper, courts are not required to determine the "best venue," but merely a logical one with a substantial connection to the litigation. *See Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 59 (2d Cir. 2007). In trademark infringement actions, venue is proper under § 1391(b)(2) "in each jurisdiction where infringement is properly alleged to have occurred." *DO Something*, , 2012 U.S. Dist. LEXIS 56805, at *8  (quoting *Hsin Ten Enter. USA*, 138 F. Supp. 2d at 459).  That is, "the defendant must have aimed its marketing and advertising at the district or have sold its infringing goods there." *Cartier v. Micha, Inc.*, 2007 U.S. Dist. LEXIS 29785, at *11 (S.D.N.Y. Apr. 20, 2007).  Importantly, "[i]f there is active marketing or advertising in a district, selling even 'nominal' amounts of an infringing product meets the substantiality requirement." *Id.*

#### 2.   The Events Giving Rise to this Action Occurred in this Judicial District and were Clearly Pled in DevPat's Complaint

The allegations of DevPat's Complaint unambiguously state and describe **the** events in this Judicial District which gave rise to this action. (D.I.1, at ¶38; *see also* ¶¶7 and 34-35). Indeed, per the Complaint, DevPat "became aware of Defendant's unauthorized use of the Infringing MYSMARTSHAKE Mark in June 2016" when USANA's products were featured on the New York-based *The Dr. Oz Show*. (*Id*.) It was **that** New York-based Dr. Oz advertising/promotion which caused a consumer who confusingly thought it was **DevPat's**

7

**SmartShake Products** that were featured on *The Dr. Oz Show* to call DevPat about its products and, in turn, prompted DevPat to contact USANA about the infringement issue. (*Id.*, Ex. C). Those allegations cannot be disputed and, thus, the Complaint itself establishes that venue is proper in this Judicial District. *DO Something*, 2012 U.S. Dist. LEXIS 56805, at *8.

Instead of challenging the clear allegations of the Complaint, and/or the legal authorities cited above, USANA's Motion relies on several blatant misrepresentations, including that:

- DevPat "***misrepresented and overstated***" the relevance of Dr. Oz and that the "***single***" instance on *The Dr. Oz Show* is a "***proverbial red herring***" that is "misguided," "unconvincing," and should be "***flatly disregarded***" by this Court (Motion at 5-6, 9 and 11);

- "USANA ***does not directly target New York with its advertising or marketing***" (*id.* at 3); and

- "only a ***negligible*** amount of events occurred in this district." (*Id.* at 4).

First of all, with respect to *The Dr. Oz Show*, what USANA tells the Court is very, very different from what they have told the rest of the world about their New York-based "Trusted a Partner" Dr. Oz, and the importance of their relationship. Indeed, according to USANA, the ***truth*** is that being "a Trusted Partner and Sponsor of The Dr. Oz Show" has had "so much impact" by making USANA "<u>a household name</u>" because "<u>millions of people</u> will be introduced to different USANA products on *The Dr. Oz Show*" and they will be "prominently featured on the show's **[New York-maintained] website**" providing USANA with "<u>unprecedented visibility for our brand</u>" as well as "name recognition, ...[and] a whole lot of excitement" that "puts us in an <u>exclusive club</u>" (Araj Decl., Ex. 5).  USANA's payment of ▮▮▮▮▮▮▮▮ to be in that "exclusive club" also belies its statement to the Court that *The Dr. Oz Show* represents only a "small fraction of the advertising done by USANA." (*Id.*, Exs. 11-13; Motion at 3.)[4]

---

[4] Per USANA's Annual Report, *The Dr. Oz Show* also sells USANA's products on its New York-maintained website.  (Araj Decl., Ex. 1 at 6.)

8

Likewise, USANA's repeated references to only a "single" event are also blatant mischaracterizations. The fact is that the infamous Dr. Oz MYSMARTSHAKE show that advertised the accused products not only involved ████████████████████ ████████████████████████████████████ (Araj Decl, Ex. 13 at 3), but then followed it up with a ***MYSMARTSHAKE Sweepstakes*** that was featured on the **New York-maintained** Dr. Oz website and lured over ██████ *entrants*, of which *1,000 contestants won free samples* of the Infringing Products (over *$47,000 worth*) that were subsequently provided by USANA through Dr. Oz. (*Id.*, Exs. 6, 17).  Since then, the New York-maintained Dr Oz website ***continues*** to advertise and promote the Infringing Products, including via the video of the infamous MYSMARTSHAKE show that remains posted and accessible to consumers/viewers to this day on the Dr. Oz website (as well as via a link from USANA's website to the Dr. Oz website). (*Id.*, Ex. 1 at 6; Ex. 18).

The same goes for USANA's assertions that it "***does not directly target New York with its advertising or marketing***" (Motion at 3) and that "only a ***negligible*** amount of events occurred in this district" (*id.* at 4) which are simply not true in view of USANA's ████████ ████████████████████████████████████████████████████ ██████████████████████████████████ . (Araj Decl., Exs. 11-13; Ex. 13 at 3). Moreover, USANA does not tell the Court about either of its New York-specific ***Twitter*** (@USANA_NY) and ***Facebook*** (@Usana.NewYork) accounts (*id.* Exs. 3-4), or that it trains and relies upon nearly ██████ currently active New York distributors to promote and sell its products in New York, including specifically the Infringing Products. (*Id.*, Ex. 2 at 7-8, Ex. 19).  The fact that USANA admits to actively selling, shipping, advertising, promoting the Infringing Products within New York and/or this Judicial District, confirms the allegations of the Complaint and establishes venue under the relevant legal authorities.  *See DO Something*, 2012 U.S. Dist. LEXIS 56805, at *8; *see also Cartier*, 2007 U.S. Dist. LEXIS 29785, at *11.

9

In addition, it is well-settled in trademark infringement actions that "when the allegedly infringing goods are distributed through several judicial districts," venue is proper in those districts where the contacts are more than "miniscule." *POLO Fashions, Inc. v. Get Off Your High Horse, Inc.*, 1984 U.S. Dist. LEXIS 23033, at *4 (S.D.N.Y. Oct. 4, 1984) (citing *Honda Assoc. v. Nozawa Trading, Inc.*, 374 F. Supp. 886 (S.D.N.Y. 1974) (finding venue proper in S.D.N.Y. when 0.52% of defendant's gross annual sales of the infringing merchandise occurred in the forum). Here, USANA's admissions more than suffice to demonstrate that its sales in New York are not even close to "miniscule". Indeed, USANA states that approximately 5% of its overall sales of the Infringing Products occurred in New York[5] (D.I.37), including to at least ▮ direct retail customers in New York (Araj Decl., Ex. 2 at 7-8).[6]

In view of the foregoing, a substantial part of the events giving rise to this action occurred in this Judicial District, and USANA's motion to dismiss for lack of venue should be denied.

**B.**      **USANA's Motion to Transfer this Case Back to the Utah Court That**

---

[5] In its supplemental memorandum, USANA states that it is unable to breakdown sales into those in S.D.N.Y. (D.I.37, n.5).  However, Courts in this Judicial District find it proper to determine venue based on total sales of infringing products in the State of New York. *See, e.g.*, *Schieffelin & Co. v. Jack Co.*, 725 F. Supp. 1314, 1320 (S.D.N.Y. 1989).

[6] The supplemental Richards Declaration is completely unsupported or corroborated by any evidence and does not even indicate whether the referenced sales percentages (5% vs. 10%) are based on revenue, units, or some other unspecified measure. (D.I.37, Ex. A). Thus, it should not be given any weight by the Court in support of USANA's Motion (although it is an admission for purposes of this opposition). Regardless, even if more sales of the Infringing Products may have occurred elsewhere that does not make venue in this Judicial District improper. Importantly, "[t]he substantial part requirement in § 1391(b)(2) does not prevent laying venue in a particular judicial district, even if a greater portion of the events occurred elsewhere." *Cartier*, 2007 U.S. Dist. LEXIS 29785, at *12 (internal citations and quotations omitted).

10

### Dismissed it for "Procedural Fencing" is Also Frivolous

### 1.      Legal Standard

"Motions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis." *Linzer v. EMI Blackwood Music Inc.*, 904 F. Supp. 207, 216 (S.D.N.Y. 1995).   "The burden of demonstrating the desirability of transfer lies with the moving party." *DealTime.com Ltd. v. McNulty*, 123 F. Supp. 2d 750, 754 (S.D.N.Y. 2000).   "The court must first determine whether the action . . . is one that might have been brought in the transferee court.   Second, the court must determine whether, considering the convenience of the parties and witnesses and the interest of justice, a transfer is appropriate." *Id.* at 754-55  (internal citations and quotations omitted).

> In determining whether transfer is warranted, court generally consider several factors, including: (1) the convenience of the witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded to plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of circumstances.

*Id.* at 755.

### 2.      The Proposed Utah "Transferee" Court Already Dismissed USANA's Trademark Invalidity Claims Due to Its "Procedural Fencing" Tactics

In arguing that "this case" could have been brought in the District of Utah, USANA fails to acknowledge or address the fact that the Utah Court dismissed the previous action – including USANA's "fourth through sixth claims for Declaratory Judgement of Invalidity and Cancellation of [the SMARTSHAKE trademarks as] invalidity claims which will be at issue in Case No. 1:17-cv-02858-JGK in the Southern District of New York" (Araj Decl., Ex. 10 at 16, n.85) -- based, *inter alia*, on its finding that USANA engaged in procedural fencing.  In doing so, the Utah Court specifically noted that it was exercising its discretion not to hear USANA's case, including the invalidity claims that will be part of this action, and that "[DevPat's] Motion

11

to Dismiss would have been granted even if there was an 'actual controversy' between the parties," due to USANA's bad faith filing of the declaratory action. (*Id*. at 12). And, so, the threshold question of whether USANA "could have" brought this action in Utah is not a hypothetical question as it is in most cases, but is one that has been answered decidedly by the Utah Court's opinion and Order in declining to exercise its statutory authority to hear USANA's case. (*Id*. at 7).

### 3.     None of the Factors Favor Transfer

#### a.     The Convenience of Witnesses

"The convenience of both party and non-party witnesses is a key factor in a 1404(a) analysis." *DealTime.com*, 123 F. Supp. 2d at 755.  Importantly, "a party seeking to rely on the convenience of the witnesses factor **must identify the material witnesses and supply a general description of what their testimony will cover**." *Id.* (emphasis added.)  Although USANA contends that this factor favors transfer, it does not identify a single witness, let alone provide a description of the allegedly "material" witnesses' testimony.  (*See* Motion at 8-9.) USANA should not be permitted to address this requirement in its Reply, and its failure to do so in its moving papers warrants a finding in favor of DevPat on this factor.

In further support of denial of this transfer request, DevPat identifies multiple potential material witnesses for whom New York is more convenient than Utah:

- Stephen R. Barrese, Esq., a Partner in the New York law firm of Dilworth & Barrese, LLP, has represented DevPat as its intellectual property counsel with respect to the asserted trademarks and can testify about the willful nature of USANA's continuing infringement, including USANA's bad faith negotiations with DevPat and USANA's filing of the Utah Action.

- Dr. Mehmet Oz, is the star of the New York-based *The Dr. Oz Show*, and may testify concerning the "Trusted Partnership" with USANA, including the advertising/promotion/sales of the Infringing Products (including during the show, as part of the MySmartShake Sweepstakes, and thereafter on the Dr. Oz New York-maintained website), knowledge/awareness of DevPat's products, and additional instances of actual confusion between the products.

12

- One or more employees of the New York-based *The Dr. Oz Show*, who are located in this Judicial District, may also testify to those same topics/issues.

- One or more of USANA's nearly ████ New York distributors/Preferred Customers, who may testify concerning the advertising/promotion/sales of the accused products, and knowledge/awareness of DevPat's products and additional instances of actual confusion between the products.

- ████████████████████████████████████████ and others at SONY Pictures Television Productions, who are located in this Judicial District, may testify concerning the "Trusted Partnership" with USANA, including the advertising/promotion/sales of the Infringing Products, and knowledge/awareness of DevPat's products and additional instances of actual confusion between the products.

- Mr. Anthony Giovanni, the former Vice President of Sales for SmartShake US, who is located in Pennsylvania and can testify concerning the instance of infringement/actual confusion from which this action arose when he received a call from a consumer after she had watched the New York-based *The Dr. Oz Show*.

Each of the above-identified individuals are located at or near this Judicial District, and as such, litigating in this Judicial District will undoubtedly be more convenient.  Moreover, each of the individuals may have information and/or documents regarding USANA's infringement, *inter alia*, marketing, promotion and sales of the Infringing Products, as well as consumer confusion between USANA's Infringing Products and DevPat's SmartShake Products.

Accordingly, this factor weighs against transfer.

### b.    The Convenience of Parties

"The convenience of the parties factor does not weigh in favor of transfer where such transfer would merely shift the inconvenience of litigating in a particular forum from one party to the other."  *DealTime.com*, 123 F. Supp. 2d at 756.  That is exactly what USANA's Motion seeks to do.  While DevPat is a Swedish company, this Judicial District is a much more convenient forum than Utah for Plaintiff. As set forth in the attached Declaration of DevPat's Founder and Member of the Board at DevPat, Mr. Bergstrom, when DevPat employees travel from Stockholm, Sweden to the United States they generally fly to New York because it is one of only a very limited number of direct, non-stop flights, whereas there are no direct, non-stop flights to any city in Utah. (Bergstrom Decl., ¶3.)

13

Moreover, in arguing alleged inconvenience to USANA's employees, Defendant neglects to mention the fact that  (Araj Decl., Ex. 2 at 5-6). USANA also failed to inform the Court that there

(*Id.* at 5-6, 9-10).

Thus, this factor does not favor transfer.

### c. The Locus of Operative Facts

As detailed above, USANA completely ignores the allegations of the Complaint which clearly establish that the locus of operative facts from which this action arose was New York. (D.I.1, at ¶38; *see also* ¶¶7 and 34-35). More specifically, per the Complaint, DevPat "became aware of Defendant's unauthorized use of the Infringing MYSMARTSHAKE Mark in June 2016" when USANA's products were featured on the New York-based *The Dr. Oz Show*. (*Id.*) It was that New York-based Dr. Oz advertising/promotion which caused the actual confusion of a consumer who called DevPat about its products, and which then prompted DevPat to contact USANA about the infringement issue. (*Id.*) USANA cannot refute these facts and averments and, thus, even under the cases it cites, this factor weighs against transfer.

---



[7]

(*Id.*; *see also*, *Id.* at Ex. 14).

14

USANA also ignores the numerous other legal authorities which further support New York as the locus of operative facts because: "In actions alleging trademark infringement or unfair competition, courts in this district have held the locus of operative facts to be in the initially chosen forum if acts of infringement, dilution, or unfair competition occur in that forum."  *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 337 (S.D.N.Y. 2010) (internal citations and quotations omitted).   In *It's a 10*, the court found that the locus of operative facts weighed in favor of retaining jurisdiction in this Judicial District in view of defendant's concession that retail sales of the infringing products occurred in New York. *Id.* The same result should follow here, where USANA has admitted to having marketed, advertised, and sold the Infringing Products in New York. (*See, e.g.,*, Araj Decl., Ex. 2 at 7-8.) That USANA may have also "engaged in improper use of the DevPat Marks" elsewhere, including in Utah where USANA is located, does not tip the scale in favor of transfer.  *See ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 549 (S.D.N.Y. 2008) ("an argument regarding where alleged infringing trademarks were developed, designed, marked or sold is simply not germane in regard to the locus of operative facts").

Therefore, this factor weighs strongly against transfer.

### d.   The Availability of Process to Compel the Attendance of Unwilling Witnesses

USANA contends this factor favors transfer, but does not identify a single non-party witness located in Utah whose attendance would have to be compelled by subpoena.  "As such, the availability of compulsory process with respect to those witnesses is not a consideration," and cuts against transfer.  *It's a 10*, 718 F. Supp. 2d at 337.  In contrast, in Section III(B)(3)(a) above, DevPat identifies numerous non-party witnesses that are undeniably located in this Judicial District— including USANA's "Trusted Partner" Dr. Oz and/or one or more employees of the New York-based *The Dr. Oz Show*, Mr. Zimmerman and/or one or more other employees of the New York-based SONY Pictures Television (U.S. Ad Sales), one or more of

DevPat's ███ New York-based distributors/Preferred Customers, and Mr. Barrese (DevPat's lead negotiator during the negotiations that were discontinued due to USANA's bad faith filing of the Utah suit)—none of whose attendance at trial could be compelled if this case were transferred to Utah.

Accordingly, this factor weighs strongly against transfer.

> **e.      The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof**

USANA incorrectly contends that this factor strongly favors transfer, because USANA is located in Utah.  (Motion at 8-9.)  Notably, USANA bases its contention on a single case from 1995—a time *before* the prevalence of electronic documents.  (*Id.*)  However, it is now well-settled that this factor "should be treated as neutral, as the location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Steadfast Ins. Co. v. Fid. Nat'l Title Ins. Co.*, 2018 U.S. Dist LEXIS 16885, at *20 (S.D.N.Y. Jan. 30, 2018) (internal quotations and citations omitted).  As such, USANA's "assertion that documents are located in [Utah] is entitled to little weight in the absence of a detailed showing as to the burden that defendant would incur in the absence of transfer." *Virgin Enters. v. Am. Longevity*, No. 99-cv-9854-CSH, 2001 U.S. Dist. LEXIS 2046, at *35 (S.D.N.Y. Feb. 28, 2001) (internal citations and quotations omitted).  USANA has not made such a showing.

Moreover, USANA completely ignores the substantial amount of potentially relevant documents (and relevant witnesses) that are located in New York in the possession of USANA's nearly ███ New York distributors/Preferred Customers, as well as the New York-based *The Dr. Oz Show* and SONY Pictures Television (U.S. Ad Sales), concerning, *inter alia*, the sales and marketing of the Infringing Products, knowledge of DevPat's products, and/or additional instances of actual customer confusion between them. (Araj Decl., Ex. 2 at 7-8; Ex. 16; Ex. 20).

For all of these reasons, this factor does not favor transfer.

16

**f.     The Relative Means of the Parties**

This factor most certainly weighs against transfer.

DevPat is a small company with a single product line and total sales in the United States on the order of about $10 million. (D.I.1 at ¶24). In stark contrast, USANA notably fails to inform the Court that it touts itself as "[o]ne of the largest publicly held direct-selling nutrition, personal health and wellness companies in the world" and its **$1.047 billion** in net sales in 2017 alone. (Araj Decl., Ex. 1 at 4.) In other words, USANA's "relative means" to litigate this matter is **100 times greater** than DevPat's. Thus, it is more than "fair to say [USANA] has greater financial means to litigate this matter" and Defendant's failure to be up-front on this issue in its Motion should also weigh against it (and transfer). *Virgin Enters.*, 2001 U.S. Dist. LEXIS 2046, at *35.

**g.     The Forum's Familiarity with the Governing Law**

This action undeniably involves <u>both</u> federal and New York state law claims.  (*See, e.g.*, D.I.1 at ¶¶46-69).  While both this Court and the Utah Court are equally familiar with federal trademark law, it cannot be, and is not, disputed by USANA that this Court is more familiar with the New York law governing the state law claims.

As such, this factor weighs against transfer.  *See DealTime.com*, 123 F. Supp. 2d at 757.

**h.     The Weight Accorded to Plaintiff's Choice of Forum**

USANA contends that DevPat's choice of forum should not be given deference because DevPat is a foreign plaintiff.  (Motion at 13-14.)  However, "even if a plaintiff is not a resident of its chosen forum, the choice will be respected as long as the balance of factors does not warrant a transfer."  *It's a 10*, 718 F. Supp. 2d at 336.  Moreover, "[w]here there is ongoing [infringing] business activity in the chosen forum . . . plaintiff's choice of forum is given more deference than it would if the connection to [the] forum were truly *de minimus*."  *Kiss My Face Corp. v. Bunting*, 2003 WL 22244587, at *4 (S.D.N.Y. Sept. 30, 2003).  Here, it is undisputed

17

that USANA continues to market, advertise, and sell the Infringing Products in this Judicial
District including through its 12,000 distributors, and on the New York-maintained Dr. Oz
website.

Even so, DevPat's choice of forum should be given deference, as USANA has not
"proffered any evidence that [DevPat] had an improper motive in choosing this forum."
*Medien Patent Verwaltung AG v. Warner Bros Entm't., Inc.*, 749 F. Supp. 2d 188, 191
(S.D.N.Y. 2010).  Like the Plaintiff in *Medien*, DevPat has "several legitimate reasons for
selecting the Southern District of New York, including the ease and expense of travel from
Europe and the location of its preferred counsel."[8]  *Id.*

Therefore, this factor weighs against transfer.

> ### i.   The Interests of Justice and Fairness Do Not Favor Transfer Back to a Utah Court Which Exercised Its Discretion and Declined to Hear USANA's Action Due to USANA's Procedural Fencing

USANA blatantly miscasts the decision of the Utah Court in its Motion by arguing to
this Court that:

- "the Utah court dismissed that declaratory judgment action because it found that there was no subject matter jurisdiction over the <u>declaratory judgment claims</u>"

- "the Utah court's grounds for dismissal simply would not apply to this case"

- "particularly where there is a different mark and product at issue in this matter."[9]

---

[8] USANA's assertion that DevPat "does not have any business tie to this district (other than the location of its attorneys)" (Motion at 13-14) is not only flat wrong and directly contradicted by the allegations of the Complaint regarding DevPat's New York product shipping/sales (*see* D.I.1 at ¶¶8-9 and 19-20, and Ex. B), but also does not change the undisputable fact that the operative facts otherwise arose in this Judicial District. (*Id.* at ¶38, and ¶¶7, 34-35 and attached Ex. C).

[9] It should be noted that the Utah Court was apparently of the impression that USANA had agreed to discontinue use of the Infringing MYSMARTSHAKE Mark (which USANA had done) <u>and</u> the mistaken belief that USANA had actually discontinued use of the infringing mark (which USANA has not done, choosing instead to continue to willfully infringe). (Araj Decl., Ex. 10 at 7-9).

18

(Motion at 14-15.)  These statements are highly misleading[10] because they fail to inform the Court that the Utah Court explicitly exercised its discretion and declined to hear USANA's trademark invalidity claims **against the trademarks at-issue here**, noting that those counterclaims "will be at issue in Case No. 1:17-cv-02858-JGK in the Southern District of New York" (Araj Decl., Ex. 10 at 16 n.85), based on its explicit findings that "this court's discretion is best exercised to decline to hear the case" and "USANA's Complaint would warrant dismissal even if the requisite controversy had been present" (*id*. at 9) because "USANA engaged in 'procedural fencing' when it filed the declaratory action." (*Id*. at 12).

Accordingly, DevPat respectfully submits that it would be unprecedented,[11] and abhorrent to the interests of justice, to accept and condone USANA's miscast of the Utah Court's decision (and its continuing bad faith use of litigation/motion practice), by sending this case back to a court which, in exercising its discretion to decline to hear USANA's claims (including its invalidity counterclaims against DevPat's asserted SMARTSHAKE® Trademark) in view of USANA's procedural fencing tactics. Moreover, USANA's bad faith tactics which are detailed in the attached Utah briefing that was adopted by the Utah Court's actual decision, should not be passed over or ignored.  (Araj Decl., Exs. 9-10).

For at least these reasons, the interests of justice and fairness weigh strongly against transfer back to the Utah Court which dismissed in the first instance.

*** 

---

[10] USANA's assertion that "Plaintiff's counsel argued at the recent status conference that such a dismissal was a suggestion by the Utah Court that this case could not, and never should, be heard in Utah" is also highly misleading – particularly because what the undersigned counsel pointed out was that the Utah Court had exercised its discretion and decided that "Defendants' Motion to Dismiss would have been granted even if there was an 'actual controversy' between the parties" based on its finding that "USANA engaged in 'procedural fencing' when it filed the declaratory action." (Araj Decl., Ex. 10 at 12).

[11] As with the rest of its brief, USANA cites to no court that has ever done (or been asked to do) what they seek from this Court -- i.e., to transfer a case back to a court that dismissed it in the first instance based on a finding of procedural fencing.

19

In view of the foregoing, USANA's motion to transfer to the District of Utah should be denied.

### C.      DevPat's Request For Attorneys' Fees

In view of the frivolous nature of USANA's Motion, the multiple blatant misrepresentations of fact presented therein (*e.g.*, that "USANA does not directly target New York with its advertising or marketing," in view of its New York-targeted *Facebook* and *Twitter* accounts, its *Dr. Oz* promotions and product giveaways to the thousands of consumers who have attended the show in New York, the ▮▮▮▮▮▮▮▮ it has paid to the New York-based Sony Pictures Television and *The Dr. Oz Show*, and its nearly ▮▮▮ active distributors/Associates in New York who market and sell USANA's products to New York consumers), and USANA's continuing pattern of bad faith litigation tactics, including with respect to its bad faith negotiations and filing of the Utah action, DevPat respectfully requests that it be awarded its fees in having to defend against yet another bad faith motion and seek/respond to the associated expedited discovery.  *See Cameron Int'l Trading Co., Inc. v. Hawk Imp., Inc.*,  2010 WL 4568980, at * (E.D.N.Y. Nov. 2, 2010) (*sua sponte* ordering that Defendants and their counsel show cause as to why they should not have to pay Plaintiff's fees incurred in responding to Defendants' frivolous motion to dismiss).

## IV.      <u>CONCLUSION</u>

For the reasons set forth above, DevPat respectfully asks the Court to deny USANA's Motion in its entirety and to award Plaintiff its fees for having to respond to the Motion and engage in the associated discovery.

20

**REDACTED**

Respectfully Submitted,

Dated:  July 24, 2018                    By:  /s/ Richard C. Pettus

Richard C. Pettus
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200
Email: pettusr@gtlaw.com

*Counsel for Plaintiff DevPat AB*

21

<u>**CERTIFICATE OF COMPLIANCE**</u>

I hereby certify that PLAINTIFF DEVPAT AB'S OPPOSITION TO DEFENDANT

USANA'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE

contains 6,997 words, and is in compliance with the formatting rules set forth in Section 2(D)

of the Court's Individual Rules of Practice.

Respectfully Submitted,

Dated:  July 24, 2018                                    By:  <u>/s/ Richard C. Pettus</u>

Richard C. Pettus
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200
Email: pettusr@gtlaw.com

*Counsel for Plaintiff DevPat AB*

22

**REDACTED**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2018, the foregoing PLAINTIFF DEVPAT AB'S

OPPOSITION TO DEFENDANT USANA'S MOTION TO DISMISS, OR IN THE

ALTERNATIVE, TO TRANSFER VENUE was filed electronically with the Clerk of Court

using the CM/ECF system, which will send a notification of such filing to all counsel of record.

Dated:  July 24, 2018                                    By:  /s/ Richard C. Pettus

Richard C. Pettus
*Counsel for Plaintiff DevPat AB*

*NY 247496244v3*