# Exhibit 2

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Southern District of New York

| | |
|---|---|
| DevPat AB | ) |
| *Plaintiff* | ) |
| v. | ) |
| USANA Health Sciences, Inc. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   17-cv-2858

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                                   Harpo Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: see Schedule A attached hereto

| Place:  Greenberg Traurig, LLP | Date and Time: |
|---|---|
| MetLife Building, 200 Park Ave, New York, NY 10166 | 09/28/2018 5:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     09/20/2018

|  | |  |  |
|---|---|---|---|
| *CLERK OF COURT* | | | |
| | OR | /s/ Richard C. Pettus | |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* | |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     DevPat AB
                                                                        , who issues or requests this subpoena, are:

Richard C. Pettus, Greenberg Traurig, LLP, MetLife Building, 200 Park Ave, New York, NY 10166; pettusr@gtlaw.com; 212-801-9387

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  17-cv-2858

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS**

1.      "Plaintiff" or "DevPat" shall mean DevPat AB, and any agents, employees, shareholders, officers, former employees, former officers, directors, subsidiaries, parent corporations, attorneys or other persons or entities acting on their behalf.

2.      "Defendant" or "USANA" or "Trusted Partner" shall mean USANA Health Sciences, Inc., including without limitation their predecessors in interest, agents, representatives, employees, consultants, attorneys, or entities acting in conjunction, joint venture, or partnership with Defendant, or any entities acting under their direction or control. (*See, e.g.*, Ex. 1 attached hereto).

3.      "Asserted Trademarks" shall mean U.S. Trademark Registration No. 4,199,080, U.S. Trademark Registration No. 4,871,259, and U.S. Trademark Registration No. 4,929,699. (*See, e.g.*, attached Ex. 2, and especially Ex. A attached thereto).

4.      "The Dr. Oz Show" shall mean the television show and associated internet website(s) featuring Dr. Mehmet Oz, as well as any agents, employees, shareholders, officers, former employees, former officers, directors, subsidiaries, parent corporations, attorneys or other persons or entities acting its behalf, including without limitation the television network on which The Dr. Oz Show airs, its production companies (e.g., Harpo Inc., Harpo Productions, Inc. and/or ZoCo Productions), and its distribution company Sony Pictures Television.

5.      "Dr. Oz" shall mean the individual named Dr. Mehmet Oz, featured on The Dr. Oz Show and any agents, employees, former employees, attorneys or other persons or entities acting on Dr. Oz's behalf.

6.      "Harpo," "You" and "Your" shall mean Harpo Inc. and/or Harpo Productions, Inc., including without limitation their predecessors in interest, agents, representatives, employees,

consultants, attorneys, or entities acting in conjunction, joint venture, or partnership with Defendant, or any entities acting under their direction or control.

7.    "USANA Shake Product" shall mean each shake related product sold by USANA under the name "MySMART," including, but not limited to, all shaker bottle, flavor optimizer, booster, multi-day kit/pack, and/or shake base products.

8.    "DevPat's SmartShake Products" shall mean DevPat's shake related products bearing one or more of the Asserted Trademarks.

9.    "MySmartShake Sweepstakes" shall mean the sweepstakes promoted on The Dr. Oz Show related to USANA Shake Products, including, but not limited to, on its website(s). (*See, e.g.*, attached Ex. 3, https://www.doctoroz.com/page/usana-mysmartshake-sweepstakes).

10.    "The Dr. Oz SmartShake Episode" shall mean and refer to the episode of the Dr. Oz Show on which the USANA Shake Product was featured (*see, e.g.*, https://www.usanahealth.net/dr-oz-segment-13-mySmartShake.html).

11.    "NY TM Infringement Suit" or "This Lawsuit" shall mean or refer to the action filed by DevPat in the United States District Court for the Southern District of New York titled, *DevPat AB v. USANA Health Sciences, Inc.,* No. 1:17-cv-02858 (S.D.N.Y.)  (*see, e.g.*, Ex. 2).

12.    "Utah Lawsuit" shall mean the action filed by USANA in the United States District Court for the District of Utah titled, *USANA Health Sciences, Inc. v. Smartshake US, Inc., et al.*, No. 2:17-cv-00139 (D. Utah) (*see, e.g.*, attached Ex. 4).

13.    "Utah Dismissal Order" shall mean the documented titled "Memorandum Decision and Order Granting [19] Motion to Dismiss," and identified as Document 52 in the Utah Lawsuit (*see, e.g.*, attached Ex. 5).

14.    "Person(s)" shall mean: (a) natural persons (also referred to as "individuals"); (b) business

or legal entities, including without limitation, corporations, partnerships, joint ventures, firms, associations, professional corporations, and proprietorships; and (c) governmental bodies or agencies.

15.     "Document(s)" shall mean anything that would be a "writing" or "recording" as defined by Rule 1001(1) of the Federal Rules of Evidence or a "document" as set forth in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation, the originals, and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including without limitation, correspondence, memoranda, notes, diaries, minutes, statistics, letters, telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, e-mails, offers, notations of any sort of conversations, working papers, applications, permits, surveys, indices, telephone calls, voice messages, meetings, printouts, teletypes, telefax, invoices, work sheets, and all drafts, alterations, modifications, changes and amendments of the foregoing), graphic or oral representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical, or electric records or representations of any kind (including without limitation, tapes, cassettes, discs, recordings, and e-mail).

16.     "Thing(s)" shall be used in the most comprehensive and inclusive sense permitted by Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, objects of every kind and nature other than a document.  By way of example, and not by way of limitation, "thing" or "things" includes prototypes, models, specimens, and the like, and commercially manufactured items.

17.     "Communication" shall mean any oral, written, or electronic transmittal of information or

request for information made from one person to another person, whether made in person, electronically, by telephone, or by any other means and includes any document(s) made only for the purpose of recording a communication, a fact, an idea, a statement, an inquiry, an opinion, a belief, or otherwise.

18.     "Agreement" shall mean any contract, transaction, license, or other arrangement of any kind, whether conditional, executed, executory, express, or implied, and whether oral or written, in which rights are granted or obligations are assumed.  The term "agreement" shall encompass completed, actual, contemplated, or attempted agreements or renewals of agreements.

19.     As used herein, the terms "relate" and "refer" are used in their broadest possible sense and include all matters comprising, constituting, containing, concerning, embodying, reflecting, involving, discussing, describing, analyzing, identifying, stating, referring to, dealing with, or in any way pertaining to.

20.     The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

21.     The terms "and" and "or" shall be construed both conjunctively and disjunctively and the plural shall be construed as the singular, and vice versa, as necessary and in order to bring within the scope of these Interrogatories any information, documents, or things that might otherwise be construed to be outside their scope.

22.     The term "including" means including, without limitation.

23.     "Each" shall be construed to include and encompass "all."

24.     In producing documents and things responsive to these requests, Plaintiffs shall furnish all documents within its possession, custody, or control, regardless of whether these documents are possessed directly by Plaintiffs, or by its present or past agents, employees, representatives,

investigators, or attorneys.

## **INSTRUCTIONS**

1.      1. This Subpoena shall be deemed continuing so as to require an immediate supplemental response if any additional responsive documents are discovered, located, identified, or obtained after your complete production of documents responsive to this Subpoena.

2.      If you object to any Instruction or Definition or to any specific item in these Requests, the grounds for your objections shall be stated with particularity.  If any objection rests in whole or in part on a claim of privilege, the privilege claimed should be stated and all facts and all documents relied upon in support of such claims shall be stated or identified with particularity.

3.      In the event that you object to, or claim a privilege with respect to, any Request, in whole or in part, you are requested to produce all documents (or portions thereof) requested in that portion of the Request as to which you have no objection or claim of privilege.

4.      A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, the file label of the folder in which the document was stored, and attachments to the document in addition to the document itself.

5.      In searching for documents and electronically stored information ("ESI") responsive to these requests, you should search for all such documents and ESI regardless of the form in which the document or ESI exists, the ownership of the device in which the ESI resides, or the location of the device in which the ESI is stored.  Among other places, you should search for ESI stored on all servers, networks, hard drives, desktop computers (including work and home computers), notebook and laptop computers, tablet computers, cell phones, personal digital assistants, jump

drives, voice mail, unifying messaging services, Web-based networking media such as Twitter, Facebook, LinkedIn, Listservs, and instant messaging services.

6.      Documents that were generated, or have ever been stored, in computer-readable electronic form should be produced as follows:

     a.  All documents should be produced as single page Bates numbered, Group IV TIFF file(s) with accompanying control file(s) in Concordance Image/Opticon format or equivalent format, all made directly from the electronic files (and <u>not</u> made from scanned hard copy versions or printouts).  You should also provide accompanying Concordance Load files with all accompanying data (including, but not limited to, Bates number information, document/file attachment information, all extracted text and all "basic metadata" as described below).  Bates number information should include the starting and ending Bates numbers for each document.  Document/file attachment information should include, in two separate fields, the starting Bates number for the primary document and the ending Bates numbers for the last attachment.  Separate extracted text (.txt) files containing extracted text for each document should also be produced and organized in a manner that is compatible with the Concordance load files.  The Concordance load files should clearly indicate the custodian (generally the person from whose file system the file is taken or the network location of the file) of each document.

     b.  As used above, "basic metadata" includes the following fields for emails:

| FIELD | DESCRIPTION |
| --- | --- |
| **ATTACHBEG** | Starting bates number or DOCID of the parent document |
| **ATTACHEND** | Ending bates number or bates number appearing on the last page of the last attachment |

| | |
|---|---|
| **BCC** | Names of persons blind copied on an email |
| **CC** | Names of persons copied on an email |
| **CUSTODIAN** | Name of person from whom the file was obtained |
| **DATERECEIVED** | Date email was received |
| **DATESENT** | Date email was sent |
| **DOCID** | Unique number assigned to each file or first page |
| **FILENAME** | Name of the original native file as it existed at the time of collection |
| **FOLDER** | File path/folder structure for the original email file as it existed at the time of collection (e.g., the Outlook folder in which an email is stored) |
| **FROM** | Name of person sending an email |
| **HASH** | Identifying value of an electronic record – used for deduplication and authentication; hash value is typically MD5 or SHA1 |
| **PARENTID** | DOCID of the parent document |
| **RCRDTYPE** | Indicates document type, i.e., email; attachment; edoc; scanned; etc. |
| **SUBJECT** | Subject line of an email |
| **TIMERECEIVED** | Time email was received in user's mailbox |
| **TIMESENT** | Time email was sent |
| **TO** | Name(s) of person(s) receiving email |

c. As used above, "basic metadata" includes the following fields for electronic documents other than emails:

| **FIELD** | **DESCRIPTION** |
|---|---|
| **ATTACHBEG** | Starting bates number or DOCID of the parent document |
| **ATTACHEND** | Ending bates number or bates number appearing on the last page of the last attachment |

| | |
|---|---|
| **AUTHORS** | Name of person creating document |
| **CUSTODIAN** | Name of person from whom the file was obtained |
| **DATECREATED** | Date document was created |
| **DATESAVED** | Date document was last saved |
| **DOCEXT** | Extension of native document |
| **DOCID** | Unique number assigned to each file or first page |
| **DOCLINK** | Full relative path to the current location of the native or near-native document used to link metadata to native or near native file (e.g., the folder and subfolder location of a document on a shared network drive) |
| **DOCTITLE** | Title given to native file |
| **FILENAME** | Name of the original native file as it existed at the time of collection |
| **FOLDER** | File path/folder structure for the original native file as it existed at the time of collection |
| **HASH** | Identifying value of an electronic record – used for deduplication and authentication; hash value is typically MD5 or SHA1 |
| **PARENTID** | DOCID of the parent document |
| **RCRDTYPE** | Indicates document type, i.e., email; attachment; email attachment (email); edoc; scanned; etc. |

d. In addition to the above Concordance load file and TIFF image files for all documents produced, separate and additional copies of documents in native format should also be produced for the following types of files: word processing files (e.g., Word, WordPerfect), spreadsheet files (e.g., Microsoft Excel), presentation files (e.g., Microsoft PowerPoint), and Adobe PDF files.  These files should be produced with all "basic metadata" intact.  They should also have intact all "track changes"

information (including any related information such as author of the changes, and whether the changes were accepted or rejected).

    e.   If any electronic documents are incapable of being produced in the aforementioned manner, you are requested to contact counsel for DevPat to discuss appropriate alternatives.

7.    All documents must be produced in a form that renders them susceptible to copying.

8.    All electronic documents and records must be produced with an explanation sufficient to render the records and information intelligible.

9.    Documents from any single file should be produced in the same order as they were found in such file.  If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.

10.    Each document should be segregated and identified by the Request to which it is primarily responsive or produced as it is kept in the ordinary course of business.

11.    All Requests herein are directed to those documents within your possession, custody or control, or within the possession, custody or control of your agents, servants and employees and your attorneys.  They are also directed to those firms, corporations, partnerships, or trusts that you control and to documents in the possession, custody or control of employees, agents, and representatives of such entities.

12.    If a document responsive to this Subpoena is no longer in your possession, custody or control, identify each such requested document by date, type of document, person(s) from whom sent, person(s) to whom sent, and person(s) receiving copies and provide a summary of its pertinent contents.

13.     If a document responsive to this Subpoena has been destroyed or is no longer in existence, for any reason, describe the content of such document as completely as possible, the date of such destruction and the name of the person who ordered or authorized such destruction.

14.     With respect to any document that you are withholding because the document is asserted to be immune from discovery, state separately with respect to each document:

    a.   the general nature of such document, i.e., whether it is a letter, memorandum, report, pamphlet, etc.;

    b.   the date on which each such document was created, reproduced or transcribed;

    c.   the name, title, and business address of each person who signed or prepared each such document and the name, title, and business address of each person who has edited, corrected, revised or amended the document;

    d.   the name, title, and business address of each person to whom each such document was communicated or made available, or otherwise known to you as being an intended or actual recipient of a copy thereof;

    e.   the name, title, and business address of each person having knowledge of the contents of the document;

    f.   the name, title, and business address of each person having possession, custody, or control of the document or any identical or non-identical copy;

    g.   the number of pages;

    h.   a brief description of the nature and subject matter of the document in sufficient detail to permit other parties to this action to assess the applicability of the asserted privilege or immunity;

    i.   the paragraph(s) of the request to which the document is responsive; and

j.   the grounds for the claimed immunity.

15.     If you find any Request or any term used in a Request to be vague, ambiguous, subject to varying interpretations, or unclear, state what portion of the Request or term you find to be vague, ambiguous, subject to varying interpretations, or unclear and state the construction employed by you in responding to the Request.

16.     These Requests should be read in the most inclusive manner possible.  Accordingly: (1) the singular shall include the plural and the plural shall include the singular whenever necessary to bring within the scope of these Requests information that might otherwise be outside their scope; (2) "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests, information and documents that might otherwise be construed to be outside their scope; (3) "each" shall be construed to include the word "every" and "every" shall be construed to include the word "each"; (4) "any" shall be construed to include the word "all" and "all" shall be construed to include the word "any"; and (5) "include" or "including" means including but not limited to, and should not be read to limit the scope of any particular Request, but merely as illustrative of some information that would be responsive.

17.     DevPat hereby reserves the right to serve further document requests by way of a Subpoena.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents and things concerning the USANA Shake Products, including, but not limited to, Your, Dr. Oz, and/or The Dr. Oz Show's promotion, advertising, offer for sale, purchase orders, consumer inquiries or feedback, and the sale of USANA Shake Products.

**REQUEST FOR PRODUCTION NO. 2:**

All communications between You, Dr. Oz and/or The Dr. Oz Show and USANA regarding the USANA Shake Products.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and things concerning any due diligence and/or trademark evaluation or investigation conducted by or for USANA or The Dr. Oz Show with respect to the USANA Shake Products and/or the Asserted Trademarks, including without limitation, the existence or results of such investigations or lack thereof.

**REQUEST FOR PRODUCTION NO. 4:**

All documents concerning agreements involving USANA and The Dr. Oz Show and/or Dr. Oz relating to the USANA Shake Products, including but not limited to all documents concerning direct or indirect payments or other compensation from USANA relating to the advertising and/or promotion of the USANA Shake Products on or by The Dr. Oz Show and/or Dr. Oz.

**REQUEST FOR PRODUCTION NO. 5:**

All documents sufficient to identify the revenues derived by You, Dr. Oz and/or The Dr. Oz Show from its relationship with USANA concerning the USANA Shake Products.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and things concerning consumer, customer, distributor or other third-party

questions, comments, reviews, feedback or inquiries regarding the USANA Shake Products and/or DevPat's SmartShake Products, including without limitation, communications relating to the same.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and things including without limitation, communications concerning each episode (original production or re-run thereof) of The Dr. Oz Show, including, but not limited to, The Dr. Oz SmartShake Episode, on which a USANA Shake Product was featured, advertised, promoted, or otherwise mentioned.

**REQUEST FOR PRODUCTION NO. 8:**

For each episode of The Dr. Oz Show during which a USANA Shake Product was featured, advertised or promoted, including, but not limited to, The Dr. Oz SmartShake Episode, please produce documents sufficient to identify the number of television viewers and dates of each such episode (estimated and/or actual for the original production and any re-run thereof).

**REQUEST FOR PRODUCTION NO. 9:**

Copies of all television shows, videos, and/or television show segments produced by You in which the USANA Shake Products were featured, advertised, promoted or otherwise mentioned.

**REQUEST FOR PRODUCTION NO. 10:**

Documents sufficient to identify the total number of viewers of all YouTube or other Internet video segments of The Dr. Oz Show during which a USANA Shake Product was advertised, promoted or otherwise mentioned.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things concerning the MySmartShake Sweepstakes, including without limitation, the decision to run the Sweepstakes, its format, design and implementation by or for

The Dr. Oz Show and/or USANA, the identity of all entrants and winners, the distribution of USANA Shake Product to all such winners, and all third-party inquiries regarding the same.

**REQUEST FOR PRODUCTION NO. 12:**

All documents and things concerning This Lawsuit, the Utah Lawsuit, the Utah Dismissal Order and/or the Asserted Trademarks, including without limitation, communications with USANA and/or any third parties concerning the same.

**REQUEST FOR PRODUCTION NO. 13:**

All documents concerning the decision by You and/or USANA to continue advertising, promoting, offering for sale, and selling the USANA Shake Products after becoming aware of This Lawsuit, the Utah Lawsuit, the Utah Dismissal Order, DevPat's SmartShake Products and/or the Asserted Trademarks (*see, e.g.*, Ex. 6).

**REQUEST FOR PRODUCTION NO. 14:**

All documents and things concerning DevPat and/or DevPat's SmartShake Products, including without limitation, communications relating to the same.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and things concerning Your policy and/or procedures, if any, for avoiding intellectual property infringement and/or handling any claims of infringement against Your Trusted Partner USANA or any other entity whose products You promote, offer for sale and/or sell on The Dr. Oz Show.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things concerning indemnification by USANA with respect to Your promotion, advertising and/or sale of USANA products on The Dr. Oz Show, including but not limited to the USANA Shake Products.

**REQUEST FOR PRODUCTION NO. 17:**

Documents sufficient to identify all lawsuits, letters or other communications concerning accusations of alleged infringement by You, Dr. Oz and/or USANA of a third party's intellectual property rights, including but not limited to, in connection with The Dr. Oz show and/or Your website(s), and the substance and nature of any resolution of the same.

# Exhibit  1



# (HTTPS://WHATSUPUSANA.COM/)

—

(HTTPS://WHATSUPUSANA.COM/)   BLOG (HTTPS://WHATSUPUSANA.COM/BLOG/)
USANA IS A TRUSTED PARTNER AND SPONSOR OF THE DR. OZ SHOW (HTTPS://WHATSUPUSANA.COM/2015/01/TRUSTED-PARTNER-SPONSOR-DR-OZ-SHOW/)
  (HTTPS://WHATSUPUSANA.COM/2015/01/USANA-BECOMES-OZ-SHOW-PARTNER-CH/)  
(HTTPS://WHATSUPUSANA.COM/2015/01/FAMILY-ACTIVE-YEAR-LONG/)

## USANA Is a Trusted Partner and Sponsor of The Dr. Oz Show

DAVID BAKER (HTTPS://WHATSUPUSANA.COM/AUTHOR/DAVIDB/)  /   JANUARY 20, 2015  /
 DR. OZ (HTTPS://WHATSUPUSANA.COM/CATEGORY/DR-OZ/),
 WHY USANA? (HTTPS://WHATSUPUSANA.COM/CATEGORY/WHY-USANA/)  /
 4 COMMENTS (HTTPS://WHATSUPUSANA.COM/2015/01/TRUSTED-PARTNER-SPONSOR-DR-OZ-SHOW/#COM



(https://whatsupusana.com/wp-content/uploads/2015/01/01.20.15-Procosa-FB-Cover.jpg)It's only 12 words, but, collectively, they make a powerful statement.

There's so much impact in those few words. Because they mean one thing—USANA is about to become a household name.

That's right. Each month, millions of people will be introduced to different USANA products on *The Dr. Oz Show*—Procosa® (https://www.youtube.com/watch?v=PaFvYE_ItiU) will kick things off with a segment on joint health.*

Viewers will also see USANA commercials every time they tune in. We'll be prominently featured on the show's website.

We're talking about unprecedented visibility for our brand. It provides name recognition, builds curiosity, and creates a whole lot of excitement. All of these are great for the entire USANA family.

But that's not all. Being a Trusted Partner and Sponsor puts us in an exclusive club. Only a handful of companies in the world can claim membership, and we're the only one in our industry to hold the title.

For Associates wanting to learn more about our partnership, check out the The Hub



(https://www.usana.com/hub/).

# Tune in This Week

Make sure you watch the show when it airs **Thursday, January 22**. Check your local listings for times and channels or visit www.doctoroz.com (http://www.doctoroz.com).

If you can't watch live, set your DVR so you don't miss our big debut on the small screen!

---

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

*We're proud to bring you the freshest content on the web! Follow USANA (https://twitter.com/USANAinc) on Twitter, like our USANA (https://www.facebook.com/USANAHealthSciences) Facebook page and enjoy the latest videos on the official USANA (https://www.youtube.com/user/USANAHealthSciences) YouTube channel.*

 *(http://www.usanafoundation.org)Learn what USANA (http://www.usanafoundation.org/) is doing to make the world a better place.*

*The future of personalized health and nutrition is now available with USANA's True Health Assessment (http://www.truehealthassessment.com/demo).*

## 0 comments

**0 Comments**                                    Sort by  Oldest

  Add a comment...

Facebook Comments Plugin

DR. OZ (HTTPS://WHATSUPUSANA.COM/TAG/DR-OZ/) | USANA (HTTPS://WHATSUPUSANA.COM/TAG/USANA/)

# Comments <sup>4</sup>

 **geraldine**
**AUGUST 1, 2015 AT 9:24 PM (HTTPS://WHATSUPUSANA.COM/2015/01/TRUSTED-PARTNER-SPONSOR-DR-OZ-SHOW/#COMMENT-320174)**

how to be apart of usana,and how much to be a member

Reply

## Lian (http://www.8913284.usana.com)

**AUGUST 7, 2015 AT 1:55 PM (HTTPS://WHATSUPUSANA.COM/2015/01/TRUSTED-PARTNER-SPONSOR-DR-OZ-SHOW/#COMMENT-320642)**

If you log in to the web, you can contact me to find the detail how to become a member. Thanks! Lian

**Reply**

## Surinder Sandhu

**MARCH 22, 2017 AT 6:14 AM (HTTPS://WHATSUPUSANA.COM/2015/01/TRUSTED-PARTNER-SPONSOR-DR-OZ-SHOW/#COMMENT-351147)**

i would like more info: before i become a member

**Reply**

## Surinder Sandhu

**MARCH 22, 2017 AT 6:11 AM (HTTPS://WHATSUPUSANA.COM/2015/01/TRUSTED-PARTNER-SPONSOR-DR-OZ-SHOW/#COMMENT-351146)**

Hi i would like to know more about your vitamins for brain and joints also how do i know that this is not a fake website sorry, but there is so much fraud going on out there

**Reply**

# Leave a Reply

Your email address will not be published. Required fields are marked *

# Comment

## Name*

Your Name *

## Email*

Your Email *

## Website

Your Website

☐ Save my name, email, and website in this browser for the next time I comment.

I'm not a robot

reCAPTCHA
Privacy - Terms

Submit

This site uses Akismet to reduce spam. Learn how your comment data is processed (https://akismet.com/privacy/).

## Search

Search

## Popular Posts

Supplement Spotlight: Dig...

118,785 views

Give Back to Your Body, E...

106,576 views

Revamp Your Resolutions:...

100,638 views

Water Cooler Wellness: Th...

99,658 views

## Categories

Select Category ▼

USANA (HTTP://USANA.COM/)   USANA ATHLETES (HTTPS://USANAATHLETES.COM/)
TRUE HEALTH FOUNDATION (HTTPS://WWW.USANAFOUNDATION.ORG/)
ASK THE SCIENTISTS (HTTPS://ASKTHESCIENTISTS.COM/)
PRIVACY POLICY (HTTPS://WWW.USANA.COM/DOTCOM/ABOUT/TERMS)

(https://www.facebook.com/usanahealthsciences)

(https://twitter.com/usanainc)

(https://youtube.com/usanahealthsciences)

(https://instagram.com/usanainc)   (https://pinterest.com/usana)

(https://weixin.qq.com/r/ikx0bEnEfxQArQ0P9xmY)

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

DEVPAT AB,                        :

                        :    **Civ. Action No.:**

             Plaintiff,     :

    v.                    :    **COMPLAINT AND**

                        :    **DEMAND FOR JURY TRIAL**

USANA HEALTH SCIENCES, INC.,    :

                        :

            Defendant.    :

-------------------------------------------------------------X

## COMPLAINT

Plaintiff DevPat AB ("Plaintiff"), by its attorneys, for its Complaint against defendant USANA Health Sciences, Inc. ("Defendant"), alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for trademark infringement, unfair competition, false designation of origin, and related claims under the United States Trademark (Lanham) Act of 1946, 15 U.S.C. §§ 1051 et seq. (as amended), and New York common law. The Complaint arises from Defendant's unauthorized adoption and use of the mark MYSMARTSHAKE, which is virtually identical to Plaintiff's SMARTSHAKE trademark. Defendant's use of the mark MYSMARTSHAKE for goods highly related to goods offered by Plaintiff under the SMARTSHAKE trademark has and will continue to confuse, mislead and deceive the general public into believing that Plaintiff manufactures, sells, sponsors, approves or licenses Defendant's protein shake products.

## THE PARTIES

2.     Plaintiff, DevPat AB, is a limited liability joint stock company, organized and existing under the laws of Sweden, with an address at Frejagatan 13 a, 723 35 Västerås, Sweden.

3.     On information and belief, Defendant, USANA Health Sciences, Inc. is a corporation, organized and existing under the laws of Utah, with an address at 3838 W Parkway Blvd, Salt Lake City, Utah 84120.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, as well as 28 U.S.C. §§ 1331, 1332, and 1338, and the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.  The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are of diverse citizenship.

5.     Personal jurisdiction over Defendant is proper because Defendant solicits, transacts, and does business within the State of New York and within this District, and the claims in this action arise out of such business activities in this District.

6.     Defendant has caused and is causing injury within this District by advertising, promoting, distributing, offering for sale and selling products bearing the infringing MYSMARTSHAKE trademark in this District.

7.     Defendant has advertised, promoted and sold products bearing the infringing MYSMARTSHAKE trademark in New York through, among other channels, The Dr. Oz Show, which is produced live and taped on W. 66th Street in New York City, broadcast to viewers in this District and across the country, with video clips available to interested consumers online through the Dr. Oz and USANA websites, including for products bearing the infringing MYSMARTSHAKE trademark (see, e.g., www.doctoroz.com/video-series/shake-it?video_id=4934571016001).  Indeed, Defendant has promoted its "USANA MySmartShake Sweepstakes" (www.doctoroz.com/page/usana-mysmartshake-sweepstakes) as well as the "MYSMARTSHAKE shake" products, and continues to promote and advertise those products bearing the "MYSMARTSHAKE" mark (www.doctoroz.com/video-series/shake-

it?video_id=4934571016001), on and through the New York-based The Dr. Oz Show and affiliated website, to a New York audience, as well as to consumers in this District and nationwide.  The Defendant prominently advertises and promotes itself, including on its website (www.usana.com), and has been and continues to be advertised and promoted on and by the New York-based The Dr. Oz Show, as "a Trusted Partner and Sponsor of The Dr. Oz Show." (www.doctoroz.com/trusted-partners). These promotional activities by Defendant on and through The Dr. Oz Show within this District have resulted in actual confusion amongst the public as to the source and origin of the infringing MYSMARTSHAKE products.

8.      Plaintiff ships products bearing the SMARTSHAKE® Trademark directly into New York.  A copy of a shipping invoice for SMARTSHAKE® products being delivered to New York is attached as Exhibit B.

9.      Plaintiff's SMARTSHAKE® bottle shakers have been sold throughout the United States in various locations and trade channels, including health food specialty stores, retail grocery stores and pharmacies, including but not limited to in locations throughout the city and state of New York, Internet websites and online stores.

10.     Venue is proper in this District under 28 U.S.C § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this District, including, as described above, Defendant's aiming of its marketing and advertising at this District, active marketing within and from this District, specific targeting consumers within this District, causing of actual confusion with the Plaintiff's products by its promotional activities within this District, and sale of its infringing goods in the District.

**FACTUAL BACKGROUND**

**A.      PLAINTIFF'S TRADEMARK RIGHTS IN ITS SMARTSHAKE® TRADEMARK**

11.    Plaintiff is the sole owner of three valid and subsisting federal trademark registrations for the SMARTSHAKE® trademark (herein after the "SMARTSHAKE® Trademark"), all of which are registered on the Principal Register.  These registrations are as follows:

| Mark | Registration Number | First Use Date | Registration Date | Goods |
|------|---------------------|----------------|-------------------|-------|
| SMARTSHAKE | 4,871,259 | September 23, 2010 | December 15, 2015 | Class 21 - Non-electric food blenders and containers for household purposes; shakers, both insulated and non-insulated, for foodstuffs, sold empty; bottles, both insulated and non-insulated, for foodstuffs, sold empty; plastic bottles, sold empty |
| SmartShake | 4,199,080 | September 24, 2010 | August 28, 2012 | Class 21 - Non-electric food, beverage and drink mixers for household, kitchen, domestic or outdoor use; bottles, sold empty; containers for household or kitchen use; sports bottles, sold empty, for the purpose of mixing supplements |
| SmartShake | 4,929,699 | N/A | April 05, 2016 | Class 21 - Non-electric food blenders and containers for household purposes; shakers, both insulated and non-insulated, for foodstuffs, sold empty; bottles, both insulated and non-insulated, for foodstuffs, sold empty; plastic bottles, sold empty |

12.    Plaintiff's registrations provide *prima facie* evidence of the validity of the SMARTSHAKE® Trademark and of Plaintiff's exclusive right to use its SMARTSHAKE® Trademark in commerce in connection with non-electric food blenders and containers for household purposes; non-electric food, beverage and drink mixers for household, kitchen, domestic or outdoor use shakers, both insulated and non-insulated, for foodstuffs, sold empty; bottles, both

insulated and non-insulated, for foodstuffs, sold empty; plastic bottles, sold empty" ("SMARTSHAKE® Goods") pursuant to 15 U.S.C. § 1115(b), and the registrations provide nationwide constructive notice of Plaintiff's exclusive rights pursuant to 15 U.S.C. § 1072. Copies of the registration certificates for the aforementioned registrations are attached as <u>Exhibit A</u>.

13.    The SMARTSHAKE® Trademark was first used in U.S. commerce on or about September 2010 in connection with the SMARTSHAKE® Goods, and since the date of first use, Plaintiff has continuously used the SMARTSHAKE® Trademark in connection with the SMARTSHAKE® Goods.

14.    The SMARTSHAKE® Trademark is immediately recognizable to the ordinary consumer and distinguishes the SMARTSHAKE® line of accessories for use in connection with protein powder and nutritional supplements from other protein shake and supplement-related products.

15.    Plaintiff manufactures and promotes, offers for sale and sells a line of drinking bottles, shakers and food containers under the distinctive SMARTSHAKE® brand.

16.    Plaintiff prominently and consistently displays its distinctive SMARTSHAKE® Trademark on the shaker bottle products, as shown below:



17.    Plaintiff's SMARTSHAKE® bottles are specifically created, produced and marketed for use in connection with protein shakes, as well as other nutritional supplements and health food products.

18.    Plaintiff's SMARTSHAKE® shakers come in a variety of styles or "series."

19.    Plaintiff ships products bearing the SMARTSHAKE® Trademark directly into New York.  A copy of a shipping invoice for SMARTSHAKE® products being delivered to New York is attached as Exhibit B.

20.    Plaintiff's SMARTSHAKE® bottle shakers have been sold throughout the United States in various locations and trade channels, including health food specialty stores, retail grocery stores and pharmacies, including but not limited to in locations throughout the city and state of New York, Internet websites and online stores.

21.    Plaintiff has also advertised and promoted, and continues to advertise, market and promote its SMARTSHAKE® products via its web site at < https://www.smartshake.com/>,

which averaged approximately 12.000 page views a month in 2016, of which approximately more than 80% were unique visitors per month in 2016".

22.     Plaintiff has advertised and promoted, and continues to advertise and promote, goods bearing the SMARTSHAKE® Trademark in a variety of media throughout the United States, including but not limited to national print advertisements, online videos, e-mails, e-newsletters, digital, search, social, and through paid spokespersons and key opinion leaders.

23.     Since Plaintiff began selling bottle shakers and related products in 2010 under the SMARTSHAKE® Trademark, Plaintiff has expended substantially large sums of money to advertise and promote the SMARTSHAKE® Goods through a variety of media throughout the United States by continuously using and displaying the SMARTSHAKE® Trademark to distinguish its goods from those offered by others in the health food and nutritional supplement space.

24.     Plaintiff has spent millions of dollars in developing and promoting its line of SMARTSHAKE® Goods.  SMARTSHAKE® Goods have been widely advertised and sold online, through general retail stores and specialty health foods stores, throughout the United States with sales well in excess of $10 million per year.

25.     As a result of such advertising and promotion, as well as the uniquely high quality and convenience of its SMARTSHAKE® Goods, such goods have become market leaders in their category and enjoy a favorable reputation among consumers throughout the United States. As a result of its widespread recognition and reputation for excellence, consumers have come to associate the SMARTSHAKE® Trademark exclusively with Plaintiff.  Together with its reputation for excellence, Plaintiff enjoys valuable goodwill in the SMARTSHAKE® Trademark.

## B.     DEFENDANT'S WRONGFUL AND INFRINGING CONDUCT

26.     On information and belief, subsequent to Plaintiff's adoption and use of the
SMARTSHAKE® Trademark and despite Plaintiff's prior rights in the SMARTSHAKE®
Trademark, Defendant adopted and commenced use in the United States of the mark
MYSMARTSHAKE on and in connection with Defendant's protein shake mixes and shaker
bottle (hereinafter the "Infringing MYSMARTSHAKE Mark").

27.     The Infringing MYSMARTSHAKE Mark is confusingly similar to Plaintiff's
SMARTSHAKE® Trademark in appearance, sound, meaning and commercial impression.

28.     Defendant prominently displays the Infringing MYSMARTSHAKE Mark on its
packaging, on its products and in connection with promotion and advertising therefor, as shown
below:





29.     Defendant is using the Infringing MYSMARTSHAKE Mark in connection with protein shake mixes and a shaker bottle therefor and as such, the Infringing MYSMARTSHAKE Mark is used for goods which are identical or highly related to Plaintiff SMARTSHAKE® Goods.

30.     Defendant promotes, advertises, offers for sale and sells product bearing the Infringing MYSMARTSHAKE Mark, including through its website, located at <usanahealth.net>, as well as through other online retailers (see, e.g., www.buynutritionals.com/usana-mysmartshake-protein-plus-booster).

31.     As described above, Defendant also promotes and advertises its products on and through The Dr. Oz Show, which is produced and broadcast live in New York City. Defendant's promotional efforts in connection with The Dr. Oz Show have included the "USANA

MySmartShake Sweepstakes", marketed to consumers nationwide, including New York-based consumers.

32.    Defendant is not affiliated with or sponsored by Plaintiff and has not been authorized by Plaintiff to use its distinctive SMARTSHAKE® Trademark or any mark confusingly similar thereto, including the Infringing MYSMARTSHAKE Mark, to identify its products.

33.    Defendant's adoption and use of the Infringing MYSMARTSHAKE Mark for its protein shake mixes and related accessories has caused and is likely to continue to cause confusion, mistake or deception among purchasers and the consuming public as to the source, origin or sponsorship of Defendant's goods.  A substantial number of actual and potential purchasers and customers, upon encountering Defendant's products or advertising bearing Defendant's Infringing MYSMARTSHAKE Mark, are likely to mistakenly believe that Defendant's goods originate with, or are licensed, approved, sponsored by or otherwise affiliated with or related to, Plaintiff's SMARTSHAKE® products.

34.    More specifically, Defendant has advertised, promoted and sold products bearing the infringing MYSMARTSHAKE trademark in New York through, among other channels, The Dr. Oz Show, which is produced live and taped on W. 66th Street in New York City, broadcast to viewers in this District and across the country, with video clips available to interested consumers online through the Dr. Oz and USANA websites, including for products bearing the infringing MYSMARTSHAKE trademark (*see, e.g.*, www.doctoroz.com/video-series/shake-it?video_id=4934571016001). Indeed, Defendant has promoted its "USANA MySmartShake Sweepstakes" (www.doctoroz.com/page/usana-mysmartshake-sweepstakes) as well as the "MYSMARTSHAKE shake" products, and continues to promote and advertise those products bearing the "MYSMARTSHAKE" mark (www.doctoroz.com/video-series/shake-

it?video_id=4934571016001), on and through the New York-based The Dr. Oz Show and affiliated website, to a New York audience, as well as to consumers in this District and nationwide.

35.     Defendant's infringing activities, including but not limited to its advertising and promotion of the infringing MYSMARTSHAKE trademark-bearing products on and through The Dr. Oz show have caused actual confusion. For instance, following an episode of The Dr. Oz show in which Defendant's infringing products were featured, Tony Giovanini, the vice president of sales for the SMARTSHAKE® brand, received a call from a confused customer who mistakenly believed that it was Plaintiff's SMARTSHAKE® products that were being promoted in that episode of The Dr. Oz Show.  Email correspondence from Tony Giovanini to Mikael Bergstrom reporting the June 15, 2016 call and example of actual confusion is attached hereto as Exhibit C.

36.     Defendant's infringement of Plaintiff's SMARTSHAKE® Trademark has been and continues to be willful, deliberate and intentional.

37.     Defendant's adoption and use of the Infringing MYSMARTSHAKE Mark is causing and will continue to cause damage and harm to Plaintiff and its valuable reputation and goodwill.

**C.     PLAINTIFF'S DEMAND LETTER TO DEFENDANT AND SUBSEQUENT DISCUSSIONS THEREWITH**

38.     As indicated above, Plaintiff became aware of Defendant's unauthorized use of the Infringing MYSMARTSHAKE Mark in June 2016 when Defendant's products were featured on The Dr. Oz Show. Following the episode in which Defendant's infringing products were featured, Tony Giovanini, the vice president of American sales for the SMARTSHAKE® brand, received a call from a confused customer who mistakenly believed that it was Plaintiff's

SMARTSHAKE® products that were being promoted through that episode of The Dr. Oz Show. (See Exhibit C).

39.     By letter to Defendant on July 28, 2016, counsel for Plaintiff notified Defendant of Plaintiff's ownership of the SMARTSHAKE® Trademark, coupled with Plaintiff's extensive advertising and marketing, and demanded that Defendant immediately cease and desist from all current and intended future use of products bearing the Infringing MYSMARTSHAKE Mark, as well as the designation "SMARTSHAKE." A copy of this letter is attached hereto as Exhibit D and incorporated herein by reference.

40.     On October 3, 2016, counsel for Defendant sent a reply letter to Plaintiff's counsel denying that its client was infringing Plaintiff's SMARTSHAKE® Trademark, but indicating a willingness to attempt to resolve the matter at hand. A copy of the October 3, 2016 letter is attached hereto as Exhibit E and incorporated herein by reference.

41.     Between October 2016 and February 2017, Plaintiff and Defendant were involved in ongoing discussions in an attempt to reach an amicable resolution.

42.     During this time, Defendant proposed a revised product packaging on which Defendant modified its mark to "USANA MYSMART," as shown below:



43.     Plaintiff approved of the revised product packaging based on the fact that the mark was amended to USANA MY SMART, no longer employed the infringing MYSMARTSHAKE mark.

44.     While the parties were finalizing settlement terms in mid-February, and the day after informing Plaintiff that it would be getting back to Defendant, Defendant inexplicably filed an action in District Court in Utah seeking Declaratory Judgment that Defendant's use of the mark "USANA MYSMART" – the revised mark noted above – does not infringe Plaintiff's MYSMARTSHAKE® Trademark.  However, as indicated above, and during the parties' discussions, the "USANA  MYSMART" mark was never alleged to be infringing, or threatened with suit, but to the contrary was approved for use by Plaintiff.

45.     Indeed, on information and belief, Defendant has not converted to the uncontested MYSMART mark, but instead has continued and, upon information and belief, Defendant plans to continue use of the Infringing MYSMARTSHAKE Mark in connection with its protein shake mix and shaker bottle products, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

**FIRST CAUSE OF ACTION**
**(Trademark Infringement in Violation of 15 U.S.C. § 1114(1) / Lanham Act § 32(1))**

46.     Plaintiff repeats and realleges each and every allegation of fact above as if set forth herein.

47.     U.S. Trademark Registration Nos. 4,871,259, 4,199,080 and 4,929,699 for the SMARTSHAKE® Trademark are valid and subsisting federally registered trademarks.  By virtue of these registrations, the SMARTSHAKE® Trademark is entitled to protection under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

48.     Defendant's use of the Infringing MYSMARTSHAKE Mark is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant's protein

powder and shaker bottle products in that the public is likely to believe that those products are provided by, sponsored by, licensed by, affiliated, or associated with, or in some other way legitimately connected to Plaintiff or its products offered under the SMARTSHAKE® Trademark, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

49.     Defendant has continued its unlawful use of its Infringing MYSMARTSHAKE Mark despite awareness of Plaintiff's SMARTSHAKE® Trademarks and the infringing nature of its products and uses of the infringing marks and as such, is willfully infringing Plaintiff's SMARTSHAKE® Trademark.

50.     Plaintiff has been damaged by the aforementioned acts in an amount to be determined at trial.

51.     Defendant's conduct, if it continues, will result in irreparable harm to Plaintiff and, specifically, to the goodwill and reputation associated with the SMARTSHAKE® Mark, unless such conduct is enjoined.

## SECOND CAUSE OF ACTION
### (False Designation of Origin, Passing Off and Unfair Competition Under 15 U.S.C. § 1125(a) / Lanham Act §43(a))

52.     Plaintiff repeats and realleges each and every allegation of fact above as if set forth herein.

53.     Without authorization from Plaintiff, Defendant has adopted and continues to use the Infringing MYSMARTSHAKE Mark in connection with the advertising and sale of goods in commerce in such a manner to falsely designate the origin of Defendant's products and confuse the public by suggesting that those products are sponsored by or affiliated with Plaintiff, in violation of 15 U.S.C. § 1125(a).

54.     Defendant's acts have a substantial economic effect on interstate commerce because goods bearing the Infringing MYSMARTSHAKE Mark are advertised and sold in

interstate commerce, and because Plaintiff's SMARTSHAKE® Goods bearing the SMARTSHAKE® Trademark are also advertised and sold in interstate commerce.

55.    Defendant's aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendant's use of a trademark virtually identical or confusingly similar to Plaintiff's SMARTSHAKE® Trademark in connection with identical or highly similar goods constitutes a false designation of origin and unfair competition.

56.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial

57.    Plaintiff has no adequate remedy at law.  If Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

### THIRD CAUSE OF ACTION
### (Common Law Trademark Infringement and Unfair Competition)

58.    Plaintiff repeats and realleges each and every allegation of fact above as if set forth herein.

59.    As a result of Plaintiff's substantial advertising and promotional efforts for the SMARTSHAKE® Trademark, as well as its dedication to providing quality products under the SMARTSHAKE® brand, Plaintiff has built up valuable goodwill in the SMARTSHAKE® Trademark.  As such, the SMARTSHAKE® Trademark has become associated with Plaintiff's products, and has come to symbolize the reputation for quality and excellence of Plaintiff's SMARTSHAKE® Goods.

60.    Without Plaintiff's consent or authorization, Defendant has used and is using the Infringing MYSMARTSHAKE Mark, which is confusingly similar to the SMARTSHAKE® Trademark, in connection with the advertising and sale of goods in commerce in such a manner as to create a likelihood of confusion among prospective purchasers, and to compete unfairly with  Plaintiff.

61.     Defendant's use of the Infringing MYSMARTHSHAKE Mark induces prospective purchasers and others to believe, contrary to the fact, that the goods sold by Defendant are rendered, sponsored, or otherwise approved by, or connected with, Plaintiff.

62.     Defendant has continued its unlawful conduct despite full knowledge and awareness of Plaintiff's trademark rights and the infringing nature of Defendant's such conduct.

63.     Defendant's use of the Infringing MYSMARTSHAKE Mark is confusingly similar to Plaintiff's SMARTSHAKE® Trademark and is likely to deceive the public into believing, falsely, that Defendant's protein shake products and accessories are associated therewith, originate from or are offered, sponsored or approved by Plaintiff, or that there is otherwise a connection between the companies' products and businesses.  Defendant has unfairly competed with Plaintiff in violation of New York common law and laws of States in which Defendant has sold its products.

64.     Defendant's unauthorized use of the Infringing MYSMARTSHAKE Mark constitutes trademark infringement of the SMARTSHAKE® Trademark under the common law.

65.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damage to its goodwill and reputation as symbolized by its valuable SMARTSHAKE® Trademark, and other damages in an amount to be proved at trial.

66.     Plaintiff does not have an adequate remedy at law, and will continue to be damaged by Defendant's sale of products bearing the Infringing MYSMARTSHAKE Mark. Unless enjoined by this Court, Defendant will continue these acts of trademark infringement and unfair competition, thereby deceiving the public and causing Plaintiff immediate and irreparable damage entitling Plaintiff to remedies available under the common law.

### FOURTH CAUSE OF ACTION
**(New York General Business Law § 360(l))**

67. Plaintiff repeats and realleges each and every allegation of fact above as if set forth herein.

68. Defendant's illegal acts as set forth above have caused damage to Plaintiff by tarnishing Plaintiff's valuable reputation and diluting or blurring the distinctiveness of Plaintiff's SMARTSHAKE® Mark in violation of New York General Business Law § 360(l).

69. Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation unless this Court enjoins Defendant from its deceptive business practices in using the Infringing MYSMARTSHAKE Mark.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Pursuant to 15 U.S.C. §1116 and the common law, that Defendant and each of its agents, servants, employees, attorneys, officers, and all others in privity and acting in concert with it be preliminarily and permanently enjoined and restrained from:

    a. using, registered or applying to register the Infringing MYSMARTSHAKE Mark, or any other trademark or trade name confusingly similar to Plaintiff's SMARTSHAKE® Trademark, in connection with the sale, advertising, promotion or distribution of any products related to protein shakes and nutritional supplements;

    b. using or authorizing to use in any manner any design, trademark, trade name, or combination thereof which imitates, resembles, or suggests the SMARTSHAKE® Trademark;

    c. otherwise infringing the SMARTSHAKE® Trademark;

    d. unfairly competing with Plaintiff, or any of their authorized licensees, in any manner, diluting the distinctiveness of Plaintiff's SMARTSHAKE®

Trademark, and otherwise injuring Plaintiff's business reputation in any manner;

e. publishing any telephone, directory or Internet listing using the Infringing MYSMARTSHAKE Mark and any other mark containing the term "SMARTSHAKE," and any other mark confusingly similar to the SMARTSHAKE® Trademark, in the advertising, offering for sale and/or sale of any goods that may reasonably be encompassed by the SMARTSHAKE® Trademark, or which may constitute a natural zone of expansion for Plaintiff;

f. engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein;

g. engaging in any other actions that constitute unfair competition with Plaintiff; and

h. destroying, altering, and/or removing any books or records that contain any information relating to the use of the Infringing MYSMARTSHAKE Mark.

2.      An order imposing a constructive trust on all proceeds and/or fruits of the sales of goods that bear a mark that infringes Plaintiff's SMARTSHAKE® Trademark;

3.      Pursuant to 15 U.S.C. § 1118, that Defendant be directed to deliver up for destruction all packages, labels, advertisements, promotions, point of sale materials, signs, prints, and all other materials in its possession or under its control bearing the Infringing MYSMARTSHAKE Mark;

4.      Pursuant to 15 U.S.C. §§ 1117 and 1125, and the common law, that Defendant account and pay Plaintiff damages in an amount sufficient to fairly compensate it for the injury it has sustained, plus all the profits that are attributable to Defendant's use of the Infringing MYSMARTSHAKE Mark, and such other sums as the Court finds to be just;

5.      All such other and further relief, in law or equity, to which Plaintiff may be entitles, or which the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all triable issues that are raised by this Complaint.

Dated: April 20, 2017                       Respectfully submitted,

                                   **GREENBERG TRAURIG LLP**


                  By:      */s/ Richard C. Pettus*
                           Richard C. Pettus
                           Masahiro Noda
                           Sarah Y. Lippman
                           Brooke Hazan
                           200 Park Avenue, 38th Floor
                           New York, NY 10166
                           Telephone: (212) 801-9200
                           Facsimile: (212) 801-6400

                           *Attorneys for Plaintiff*
                           *DevPat AB*

# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

# SMARTSHAKE

**Reg. No. 4,871,259**

**Registered Dec. 15, 2015**

**Int. Cl.: 21**

**TRADEMARK**

**PRINCIPAL REGISTER**

DEVPAT AB (SWEDEN AKTIEBOLAG (AB))
SKRAPAN 1890
VÄSTERÅS, SWEDEN SE-72210

FOR: NON-ELECTRIC FOOD BLENDERS AND CONTAINERS FOR HOUSEHOLD PURPOSES; SHAKERS, BOTH INSULATED AND NON-INSULATED, FOR FOODSTUFFS, SOLD EMPTY; BOTTLES, BOTH INSULATED AND NON-INSULATED, FOR FOODSTUFFS, SOLD EMPTY; PLASTIC BOTTLES, SOLD EMPTY, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 12-5-2009; IN COMMERCE 9-23-2010.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 4,199,080.

SN 86-180,384, FILED 1-30-2014.

ANNE E. GUSTASON, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,199,080**

**Registered Aug. 28, 2012**

**Int. Cl.: 21**

**TRADEMARK**

**PRINCIPAL REGISTER**

MIKAEL NILSSON (SWEDEN INDIVIDUAL)
STORA GATAN 2 D 1TR
VÄSTERÅS, SWEDEN SE-72209

FOR: NON-ELECTRIC FOOD, BEVERAGE AND DRINK MIXERS FOR HOUSEHOLD, KIT-CHEN, DOMESTIC OR OUTDOOR USE; BOTTLES, SOLD EMPTY; CONTAINERS FOR HOUSEHOLD OR KITCHEN USE; SPORTS BOTTLES, SOLD EMPTY, FOR THE PURPOSE OF MIXING SUPPLEMENTS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 12-5-2009; IN COMMERCE 9-24-2010.

THE MARK CONSISTS OF STYLIZED "S" TO THE LEFT OF THE WORD "SMARTSHAKE".

SN 85-130,447, FILED 9-15-2010.

JACQUELINE A. LAVINE, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office

# Smart**Shake**

**Reg. No. 4,929,699**

**Registered Apr. 5, 2016**

**Int. Cl.: 21**

**TRADEMARK**

**PRINCIPAL REGISTER**

DEVPAT AB (SWEDEN JOINT-STOCK COMPANY)
FREJAGATAN 13A
SE-723 35 VÄSTERAS
SWEDEN

FOR: NON-ELECTRIC FOOD BLENDERS AND CONTAINERS FOR HOUSEHOLD PURPOSES; SHAKERS, BOTH INSULATED AND NON-INSULATED, FOR FOODSTUFFS, SOLD EMPTY; BOTTLES, BOTH INSULATED AND NON-INSULATED, FOR FOODSTUFFS, SOLD EMPTY; PLASTIC BOTTLES, SOLD EMPTY, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

THE MARK CONSISTS OF THE STYLIZED WORDING "SMART SHAKE" WITH "SMART" IN BLUE AND "SHAKE" IN BLACK.

PRIORITY DATE OF 7-9-2014 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 1248034 DATED 7-25-2014, EXPIRES 7-25-2024.

THE COLOR(S) BLUE AND BLACK IS/ARE CLAIMED AS A FEATURE OF THE MARK.

SER. NO. 79-165,589, FILED 7-25-2014.

SHANNON TWOHIG, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

# EXHIBIT B

NINGBO TIANQI MOLDING CO. LTD.
NINGHAI NINGDONG ECONOMIC DEVELOPMENT ZONE
NINGHAI,NINGBO P.R.CHINA

**COPY**

**AIT**
WORLDWIDE LOGISTICS ®

FMC NO.025018N

| Consignee | |
|---|---|
| SMARTSHAKE AB | |

| Notify Party | |
|---|---|
| GASPARI NUTRITION<br>575 PROSPECT STREET SUITE 301<br>LAKEWOOD NJ 08701<br>UNITED STATES | |

Received by the Carrier, the Goods as specified below in apparent good order and condition unless otherwise stated, to be transported to such place as agreed, authorised or permitted herein and subject to all the terms and conditions appearing on the front and reverse of this Bill of Lading to which the Merchant agrees by accepting this Bill of Lading, any local privileges and customs notwithstanding.
The particulars given below as stated by the shipper and the weight, measure, quantity, condition, contents and value of the Goods are unknown to the Carrier.
In WITNESS, whereof one (1) original Bill of Lading has been signed if not otherwise stated below, the same being accomplished the other(s), if any to be void. If required by the Carrier one (1) original Bill of Lading must be surrendered duly endorsed in exchange for the Goods or delivery order.

| Vessel | | Voyage |
|---|---|---|
| HONOLULU BRIDGE | | 018A |

| Place of Receipt | Port of Loading | Destination (if on carr) | Release |
|---|---|---|---|
| NINGBO, CHINA | NINGBO, CHINA | NEW YORK, UNITED STATES | ORIGINAL BILL - SURRENDERED AT ORIGIN |

| Shipped On Board | Port of Discharge | Freight Payable At | No. of Original B/L |
|---|---|---|---|
| 13-Sep-15 | NEW YORK, UNITED STATES | FREIGHT COLLECT | 1 (ONE) |

*Details of cargo as declared by Shipper*

Declared Cargo Value U.S. $

| Marks and Numbers | Description of Goods | Gross Mass | Cubic(M3) |
|---|---|---|---|
| SMARTSHAKE | 1 x 40HC CONTAINER<br>1339 Carton(s)<br>SHAKER BOTTLE | 6695 KG | 65.8 M3 |
| P.O. # 80419 | Consol Ref: C00052763      *Shipper Load and Count | | |

| Container | Seals | Type | Weight(KG) | Volume(M3) | Packages | Mode |
|---|---|---|---|---|---|---|
| KKFU7369663 | CBG62178 | 40HC | 6695 | 65.8 | 1339 CTN | CY/CY |

| Delivery Agent | Freight and Charges |
|---|---|
| AIT WORLDWIDE LOGISTICS, INC.<br>152-65 ROCKAWAY BLVD<br>JAMAICA NY 11434<br>UNITED STATES<br>Phone:  +1 (347) 535-1176 | |

In witness of the contract herein contained, the above stated number of originals Bills of Lading have been issued, one of which is to be accomplished, the other(s) being void.

AS CARRIER

| Place Of Issue: | Date Of Issue: |
|---|---|
| NINGBO, CHINA | |

| Place of Acceptance | Place of Delivery | Total No. of Packages |
|---|---|---|
| NINGBO, CHINA | NEW YORK, UNITED STATES | ONE CONTAINER(S) |

HBOL-EAG

# EXHIBIT C

**vasteras@bjerken.se**

Ämne:                                VB: SmartShake Infringement

**Från:** Tony Giovanini

**Datum:** 15 juni 2016 00:27:04 CEST
**Till:** Mikael Bergström
**Ämne: SmartShake Infringement**

Mikael,

I was in the office later this evening and received a call from a lady who suggested we were featured on Dr. Oz. She was requesting a free sample. I am not sure if you are familiar with Dr. Oz, but he is a very well-liked and watched medical doctor who has his on day time TV show. He was featuring a protein product called USANA SmartShake. I have attached a link to the show, along with a link to the USANA website

http://www.doctoroz.com/episode/do-you-have-chronic-fatigue-real-reason-you-have-no-energy?video_id=4934595837001

http://www.usanahealth.net/en_US/marketing-landing-pages/dr-oz-segment-13-MySmartShake.RF13.html

Ironically, when I went to their website, the brand is featured, along with a co-branded Blender Bottle, that is called "MySmart™Shake"

We should go after these guys hard, as well as go after Blender Bottle for placing our name on their bottle. There has to be some legal footing that we have that would prevent both companies from using the name. There is no way Blender Bottle can brand a bottle with SmartShake if we are trademarked.

Let's discuss in the lead team on Wednesday.

Thanks,
Tony

Tony Giovanini
Vice President Sales, Americas

www.smartshake.com

 SmartShake

# EXHIBIT D

**DB**

Peter G. Dilworth
Rocco S. Barrese
Jaksha C. Tomic
Stephen R. Barrese
Michael J. Musella
_____

Of Counsel
Michael A. Scaturro

**DILWORTH & BARRESE, LLP**
*Attorneys at Law*
*1000 Woodbury Road, Suite 405*
*Woodbury, New York 11797*
_____

*Telephone (516) 228-8484*
*Facsimile (516) 228-8516*
*Email iplaw@dilworthbarrese.com*

*Stephen R. Barrese*
*Direct (516) 224-1624*
*sbarrese@dilworthbarrese.com*

George M. Kaplan
Kimberly T. Nguyen*
Joyce F. Liu
Thomas J. Tatonetti*

_____
*Admitted in NJ only

July 28, 2016
Certified Mail – RRR
Confirmation by Regular Mail

USANA Health Sciences, Inc.
DBA USANA, Inc.
3838 West Parkway Blvd.
Salt Lake City, UT 84120

      Re:    **SMARTSHAKE** ®

Dear Sirs:

We serve as legal counsel to DevPat AB aktiebolag, the current owner of several U.S. Trademarks including U.S. Registration Nos. 4871259, 4,199,808 and 4,929,669, to the marks **SMARTSHAKE**®, **SmartShake**® and **SmartShake**® in International Class 021 for Non-electric food blenders and containers for household purposes; shakers, both insulated and non-insulated, for foodstuffs, sold empty; bottles, both insulated and non-insulated, for foodstuffs, sold empty; plastic bottles, sold empty. A copy of our client's U.S. Trademark Registrations are enclosed for your convenience.

DevPat is continuously advertising and promoting its goods via the Internet, printed advertising and other channels for many years and has become a leader in the industry. It has come to our attention that your company is using the term "**MYSMARTSHAKE**" in connection with protein shakes and blender bottles, which is confusingly similar to our client's registered trademarks **SMARTSHAKE**®, **SmartShake**® and **SmartShake**®.

Our client has spent a considerable number of years building a favorable reputation and customer following in connection with its **SMARTSHAKE**®, **SmartShake**® and

USANA Health Sciences, Inc.                                    July 28, 2016
                                                                    Page 2

**SmartShake**® trademarks and moreover has a significant investment in each which cannot be permitted to be destroyed or diluted by the unauthorized use of our client's trademark. The use of **"MYSMARTSHAKE"** has caused and is likely to continue to cause confusion among consumers that your goods are associated with our client's company and trademark. Confusion among consumers will result in substantial damage to our client in terms of lost sales and possibly injured reputation.

        Accordingly, we require that you immediately cease and desist any use of the term **"SMARTSHAKE"** without our authorization or any variation thereof in connection with your products or on any other advertisements of your products. My client would prefer to resolve this issue amicably perhaps possibly based on a business relationship.

        My client would appreciate a response from you of your intentions to comply with our requests in connection with this matter within ten (10) days.  We hope to be able to resolve this matter without the need for any further legal action.

        If you should have any questions, please feel free to contact us.

                                Very truly yours,


                                Stephen R. Barrese


SRB/rrd
Enclosure

cc:     Marathon Reprographics, Inc.
        DBA MySmartPlans
        716 W Pennway
        Kansas City, MI 64108

# EXHIBIT E

# KIRTON | McCONKIE

Jarod R. Marrott
jmarrott@kmclaw.com
801.323.5937

October 3, 2016

**VIA ELECTRONIC MAIL**
Stephen R. Barrese
Dilworth & Barrese, LLP
1000 Woodbury Road, Suite 405
Woodbury, New York 11797
sbarrese@dilworthbarrese.com

       RE:   SMARTSHAKE

Dear Mr. Barrese:

      I represent USANA Health Sciences, Inc. in its intellectual property matters, and have been asked to respond to your letter dated July 28, 2016. Please know that USANA respects the rights of others and would never intentionally seek to confuse consumers or trade upon the goodwill of another company. USANA selected the name "MySmart" to function together with a variety of descriptive words in conjunction with a variety of its products (e.g. "MySmart Bar" used with protein bars). Any similarity with your client's trademarks occurred without knowledge of your client's trademarks or intention to trade on any actual or perceived similarity to your client's marks.

      The term "Shake" can be used as a verb that is descriptive of shaker bottles and similar products of the type sold by your client under its trademarks; and it is regularly used in trademarks attached to such items (see, e.g., Registration Nos. 4890937 (TWISTSHAKE), 4423866 (ISHAKE), 4479049 (SHAKE & GO), and 7404842 (FIFTY SHAKES). The word "Shake" is also used as a noun generic or descriptive of my client's protein products, which even you described in your letter as "protein shakes." Thus, there is little trademark significance associated with the use of the term SHAKE with either of our clients' products. As you are probably aware, the term "Smart" is a heavily-used trademark term, with over 12,000 live combined word mark hits on the U.S. Trademark Office database of registered and applied-for marks. It therefore appears that there is minimal source-identifying significance that should be applied to use of the word SMART (see, e.g., Registration Nos. 2026241 (SMART CHOICE), 3599980 (SMART SOURCE), 3793693 (SMART BOTTLE), 3872359 (SMARTUBE), 4522165 (SMART LIVING), 4693814 (SMART DISC), 3513554 (SMART PORTION), 4932804 (SMART HOME ESSENTIALS FOR LIVING), 2199487 (SMART&FINAL), 3910895 (SMART + SIMPLE ORGANIZATION), 4531335 (SMARTPAN), and 4573217 (SMARTLOC)). Thus, while we recognize that your client has obtained registration of its SMARTSHAKE family of marks, we believe that consumers are not likely to be confused by my client's use of its differing MySmart family of marks in conjunction with descriptive words such as SHAKE applied to protein shakes.

ATTORNEYS AT LAW    Kirton McConkie Building, 50 East South Temple, Salt Lake City, UT 84111   801.328.3600 tel  801.321.4893 fax
www.kmclaw.com    Key Bank Tower, 36 South State Street, Suite 1900, Salt Lake City, UT 84111   801.328.3600 tel  801.321.4893 fax
Thanksgiving Park Four, 2600 W Executive Parkway, Suite 400, Lehi, UT 84043   801.426.2100 tel  801.426.2101 fax

Stephen R. Barrese
October 3, 2016
Page 2

Furthermore, we believe it is unlikely that consumers will be confused by the source of our clients' respective products. My client's products are prominently labeled with my client's USANA mark, making clear the source of its products. Furthermore, the parties' respective marks differ in that the USANA MySmart product line includes a distinguishing "My" at the start of the mark, where it is most likely to be recognized by consumers as distinguishing. Furthermore, with respect to the USANA MySmart$^{TM}$ Shake BlenderBottle sold by my client, we further note that the printing on the product clearly separates the "MySMART" from the "SHAKE," further reducing the likelihood that consumers will inadvertently believe there is any association between our clients' respective products.

In light of the above considerations and the evidence currently available to us, we therefore are of the belief that my client's actions are not likely to confuse consumers or dilute your client's trademarks.

We note that you have alleged that my client's actions have caused confusion among consumers, and we would be interested to receive more detail in relation to any incidents of actual confusion and are willing to work with you and your client to take action to reduce and prevent instances of actual confusion.

Like your client, my client is committed to resolving this matter amicably. We remain open to receiving additional information from you relating to alleged instances of actual confusion and to readdressing these issues based on any additional information you can provide. Furthermore, we recognize that you have suggested the possibility of a resolution of these issues with a business relationship between our respective clients. We remain open to considering any proposal that you have along those lines.

Sincerely yours,

KIRTON | McCONKIE

Jarod R. Marrott

JRM:ADS

# Exhibit 3



OLAY



POWERFUL ANTI-AGING.
LIGHTWEIGHT
SPF30.

# Enter to Win: USANA MySmart™Shake Sweepstakes

We're sorry. This sweepstakes has ended.

*Posted on 6/13/2016*

    PRINT



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

DEVPAT  0000541

Fast food, processed meals, and sugar-filled drinks dominate today's food choices, making it a challenge to find healthy and convenient options. When it comes to making the right dietary choices, the options are limited and most people don't get the right balance.

USANA MySmart™Shakes are formulated to fit your lifestyle. Designed with ingredients that are simple and pure, MySmartShakes support macronutrient balance—meaning they help you achieve the appropriate ratio of carbohydrates, proteins, fats, and fiber in your diet.

MySmartShakes deliver complete proteins with beneficial fats, helping the body build cell membranes and supporting a healthy metabolism. And the lower carbohydrate content is intended to rebalance the high-carb diets wreaking havoc on your health.*

Beyond the ingredients, MySmartShakes are customizable and you can satisfy your individual needs through three protein bases, five flavor optimizers, and two boosters. MySmartShakes—in combination with the USANA nutritional supplements—are a great way to help you reach your fitness goals as part of a healthy lifestyle.

Learn more about USANA's MySmart™Shakes and other high-quality nutritional products.

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

NO PURCHASE NECESSARY. Internet access required. Promotion open until 9:00 AM ET on June 21, 2016. Open to all legal residents of the 50 United States (including DC) and Canada (excluding Quebec). Must be at least 18 years of age to enter or age of majority in jurisdiction of residence. Void in Quebec and where prohibited. Total ARV of all prizes is $47,190. See Official Rules at http://www.doctoroz.com/page/usana-mysmartshake-sweepstakes-official-rules. SPONSOR: USANA Health Sciences, Inc., 3838 W Parkway Blvd, Salt Lake City, UT 84120

d  We're sorry. This sweepstakes is now closed. Thank you for watching The Dr. Oz Show!

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY                    DEVPAT 0000542

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

DEVPAT 0000543

Enter Your Health Questions for Dr. Oz to Answ  Ask

## TODAY'S TOP STORIES

See What Your Lungs Look Like During an Asthma
Attack

Why Kathy Griffin Will Make Fun of Anything

6 All-Natural Fibroids Prevention Tips

The Guide to Building the Best Salad

What Every Woman Needs to Know About Fibroids

Quiz: What's Your Fibroid Risk?

## WE RECOMMEND

The Oz Insider Whole30 Cookbook Sweepstakes
Official Rules

USANA Visionex®: Enter for a Chance to Win!

Christie Brinkley's Timeless Beauty Sweepstakes
Official...

Giveaways

The Oz Insider Essential Oils Book Sweepstakes
Official...

Recommended by Outbrain

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

DEVPAT 0000544



TICKETS | GIVEAWAYS | CLINICIANS' CORNER | CONTACT | ADVERTISE | PRESS | OZ MEDIA | HEALTHCORPS®
FAQS | TERMS



This website is for informational and entertainment purposes only and is not a substitute for medical advice, diagnosis or treatment. | © 2017 Harpo, Inc., All Rights Reserved | Terms | Privacy

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

DEVPAT 0000545

# EXHIBIT 4

JAMES T. BURTON (Utah Bar No. 11875)
*jburton@kmclaw.com*
JAROD R. MARROTT (Utah Bar No. 10219)
*jmarrott@kmclaw.com*
JOSHUA S. RUPP (Utah Bar No. 12647)
*jrupp@kmclaw.com*
**KIRTON MCCONKIE**
36 South State Street, 19th Floor
Salt Lake City, Utah 84111
Telephone: (801) 328-3600
Facsimile:  (801) 321-4893

*Attorneys for Plaintiff USANA Health Sciences, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| USANA HEALTH SCIENCES, INC., a Utah corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>SMARTSHAKE US, INC., a Pennsylvania corporation; DEVPAT AB, a Swedish limited company; and MIKAEL NILSSON, an individual,<br><br>        Defendants. | **COMPLAINT**<br><br>Case No.: 2:17-cv-00139-EJF<br><br>Judge: Evelyn J. Furse<br><br>**JURY TRIAL DEMANDED** |

Plaintiff USANA Health Sciences, Inc. ("USANA"), by and through its undersigned counsel of record, hereby complains against Defendants SmartShake US, Inc. ("SmartShake"), DevPat AB ("DevPat"), and Mikael Nilsson ("Nilsson") (collectively, "Defendants") as follows.

## **PARTIES**

1.     USANA is a Utah corporation with its principal place of business in Salt Lake City, Utah.

2.     DevPat is a Swedish limited company with its principal place of business in Vasteras, Sweden.

3.     SmartShake is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania.  Upon information and belief, SmartShake is the U.S. arm of DevPat.

4.     Nilsson is an individual living, upon information and belief, in Sweden.  Nilsson is the founder of DevPat and SmartShake.

## JURISDICTION AND VENUE

5.     This is a civil action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2002, and the trademark laws of the United States, 15 U.S.C. § 1501 *et seq.* and 15 U.S.C. § 1125 *et seq.*

6.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (trademarks).

7.     This Court has personal jurisdiction over Defendants as they have purposefully directed threatening communications into this district which have reasonably caused USANA to believe that a trademark infringement suit will imminently follow if USANA continues to sell its USANA MySmart brand protein shake mix products.

8.     The Court further has specific jurisdiction over Defendants as Defendants' SmartShake products are sold directly into and available to be purchased in this district,

2

including at smartshake.com and amazon.com, and at Walmart, GNC, Vitamin Shoppe, 24 Hour
Fitness, among other places.

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) as Defendant
directed the threats of trademark infringement complained of herein in this District.

## FACTUAL BACKGROUND

### USANA and its USANA MySmartShake Shake Products

10.     USANA is a Utah business located in Salt Lake City.

11.     USANA manufactures highly-rated and effective nutritional supplements, diet
and energy products, personal care (hair, skin, and body), and other healthcare products
throughout the world

12.     USANA's products are sold through a direct selling method as opposed to sales in
a fixed retail location.  Indeed, USANA is heavily involved in direct selling associations,
including in the United States and throughout the world.

13.     Among other product offerings, USANA offers its unique USANA MySmart
brand protein shake mix products to consumers.

14.     USANA MySmart brand protein shake mix products are designed with simple
and pure ingredients, providing a macronutrient balance.

15.     USANA MySmart brand protein shake mix products are customizable, including
multiple protein bases, flavor optimizers, and boosters.

**Defendants' Trademarks and Bottles**

16.     Nilsson is the owner of United States Trademark Registration No. 4,199,080 (the "'080 Mark") for SMARTSHAKE.  *See* Exhibit 1.  The '080 Mark is registered in International Class 21 (housewares) and is limited to non-electric food, beverage, and drink mixers for household, kitchen, domestic, or outdoor uses; bottles; containers for household or kitchen use; and sports bottles.

17.     DevPat is the owner of United States Trademark Registration No. 4,871,259 (the "'259 Mark") for SMARTSHAKE.  *See* Exhibit 2.  The '259 Mark is registered in International Class 21 (housewares) and is limited to non-electric food blenders and containers for household purposes; shakers; foodstuffs; and plastic bottles.

18.     DevPat is the owner of United States Trademark Registration No. 4,929,699 (the "'699 Mark") for SMARTSHAKE.  *See* Exhibit 3.  The '699 Mark is registered in International Class 21 (housewares) and is limited to non-electric food blenders and containers for household purposes; shakers; foodstuffs; and plastic bottles.

19.     The '080, '259, and '699 Marks are referred to collectively as "Defendants' Marks."

**Defendants' Repeated Threats of Trademark Infringement Against USANA**

20.     Defendants have repeatedly threatened USANA with causing consumer confusion with Defendants' Marks by USANA's use of the USANA MySmart brand protein shake mix products, starting in July 2016 and continuing since.

4

21.     Defendants threats of trademark infringement creates a justiciable controversy regarding USANA's right to use and market its USANA MySmart brand protein shake mix products free of any allegation by Defendants that such use constitutes trademark infringement of Defendants' Marks.

### FIRST CLAIM FOR RELIEF
**Declaratory Judgment of Non-Infringement of United States Trademark No. 4,199,080**

22.     USANA reincorporates all previous paragraphs as if set forth fully herein.

23.     Nilsson is the owner of the '080 Mark.

24.     Defendants accuse USANA of infringing the '080 Mark and have threatened to bring a lawsuit against USANA.

25.     USANA has not and does not infringe the '080 Mark.

26.     An actual and justiciable controversy exists between USANA and Defendants regarding the alleged infringement of the '080 Mark.

27.     USANA is entitled to a declaration that it does not infringe the '080 Mark.

### SECOND CLAIM FOR RELIEF
**Declaratory Judgment of Non-Infringement of United States Trademark No. 4,871,259**

28.     USANA reincorporates all previous paragraphs as if set forth fully herein.

29.     DevPat is the owner of the '259 Mark.

30.     Defendants accuse USANA of infringing the '259 Mark and have threatened to bring a lawsuit against USANA.

31.     USANA has not and does not infringe the '259 Mark.

32.     An actual and justiciable controversy exists between USANA and Defendants

regarding the alleged infringement of the '259 Mark.

33.     USANA is entitled to a declaration that it does not infringe the '080 Mark.

**THIRD CLAIM FOR RELIEF**
**Declaratory Judgment of Non-Infringement of United States Trademark No. 4,929,699**

34.     USANA reincorporates all previous paragraphs as if set forth fully herein.

35.     DevPat is the owner of the '699 Mark.

36.     Defendants accuse USANA of infringing the '699 Mark and have threatened to bring a lawsuit against USANA.

37.     USANA has not and does not infringe the '699 Mark.

38.     An actual and justiciable controversy exists between USANA and Defendants regarding the alleged infringement of the '699 Mark.

39.     USANA is entitled to a declaration that it does not infringe the '699 Mark.

**FOURTH CLAIM FOR RELIEF**
**Declaratory Judgment of Invalidity and Cancellation**
**of United States Trademark No. No. 4,199,080**

40.     USANA reincorporates all previous paragraphs as if set forth fully herein.

41.     The '080 Mark is invalid and should be cancelled as it is being used by Defendants to exclude USANA's lawful use of the USANA MySmart brand protein shake mix products name.

42.     Furthermore, and pursuant to 15 U.S.C. § 1064 and §1119, Defendants' '080 Mark should be declared invalid and ordered cancelled as it is generic and/or lacks the necessary distinctiveness to legally function as a trademark under applicable United States law.

6

### FIFTH CLAIM FOR RELIEF
**Declaratory Judgment of Invalidity and Cancellation
of United States Trademark No. No. 4,871,259**

43.     USANA reincorporates all previous paragraphs as if set forth fully herein.

44.     The '259 Mark is invalid and should be cancelled as it is being used by
Defendants to exclude USANA's lawful use of the USANA MySmart brand protein shake mix
products name.

45.     Furthermore, and pursuant to 15 U.S.C. § 1064 and §1119, Defendants' '259
Mark should be declared invalid and ordered cancelled as it is generic and/or lacks the necessary
distinctiveness to legally function as a trademark under applicable United States law.

### SIXTH CLAIM FOR RELIEF
**Declaratory Judgment of Invalidity and Cancellation
of United States Trademark No. No. 4,929,699**

46.     USANA reincorporates all previous paragraphs as if set forth fully herein.

47.     The '699 Mark is invalid and should be cancelled as it is being used by
Defendants to exclude USANA's lawful use of the USANA MySmart brand protein shake mix
products name.

48.     Furthermore, and pursuant to 15 U.S.C. § 1064 and §1119, Defendants' '080
Mark should be declared invalid and ordered cancelled as it is generic and/or lacks the necessary
distinctiveness to legally function as a trademark under applicable United States law.

### PRAYER FOR RELIEF

WHEREFORE, USANA prays for judgment as follows:

A.  For an order declaring that USANA does not infringe Defendants' Marks;

B.  For an order declaring that Defendants' Marks are invalid;

C.  For an order, pursuant to 15 U.S.C. § 1119, to rectify the Principal Register of the United States Patent and Trademark Office ("USPTO") cancelling each of Defendants' Marks, and such order certified to the Director of the USPTO, who shall make the appropriate entry upon the records of the USPTO;

D.  For an order that USANA may lawfully sell its USANA MySmart brand protein shake mix products;

E.  For an order that this case is an exceptional case and an award of USANA's attorneys' fees and costs under 15 U.S.C. § 1117; and

F.  That USANA be granted such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

USANA hereby demands trial by jury as to all issues in this action triable by jury.

DATED this 24th day of February, 2017.

Respectfully Submitted,

KIRTON McCONKIE

By /s/ James T. Burton
    James T. Burton
    Jarod R. Marrott
    Joshua S. Rupp

*Attorneys for Plaintiff USANA Health Sciences, Inc.*

# Exhibit 1

# United States of America
## United States Patent and Trademark Office



Reg. No. 4,199,080

Registered Aug. 28, 2012

Int. Cl.: 21

TRADEMARK

PRINCIPAL REGISTER

MIKAEL NILSSON (SWEDEN INDIVIDUAL)
STORA GATAN 2 D 1TR
VÄSTERÅS, SWEDEN SE-72209

FOR: NON-ELECTRIC FOOD, BEVERAGE AND DRINK MIXERS FOR HOUSEHOLD, KIT-CHEN, DOMESTIC OR OUTDOOR USE; BOTTLES, SOLD EMPTY; CONTAINERS FOR HOUSEHOLD OR KITCHEN USE; SPORTS BOTTLES, SOLD EMPTY, FOR THE PURPOSE OF MIXING SUPPLEMENTS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 12-5-2009; IN COMMERCE 9-24-2010.

THE MARK CONSISTS OF STYLIZED "S" TO THE LEFT OF THE WORD "SMARTSHAKE".

SN 85-130,447, FILED 9-15-2010.

JACQUELINE A. LAVINE, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

# Exhibit 2

# United States of America
## United States Patent and Trademark Office

# SMARTSHAKE

**Reg. No. 4,871,259**

**Registered Dec. 15, 2015**

**Int. Cl.: 21**

**TRADEMARK**

**PRINCIPAL REGISTER**

DEVPAT AB (SWEDEN AKTIEBOLAG (AB))
SKRAPAN 1890
VÄSTERÅS, SWEDEN SE-72210

FOR: NON-ELECTRIC FOOD BLENDERS AND CONTAINERS FOR HOUSEHOLD PURPOSES; SHAKERS, BOTH INSULATED AND NON-INSULATED, FOR FOODSTUFFS, SOLD EMPTY; BOTTLES, BOTH INSULATED AND NON-INSULATED, FOR FOODSTUFFS, SOLD EMPTY; PLASTIC BOTTLES, SOLD EMPTY, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 12-5-2009; IN COMMERCE 9-23-2010.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 4,199,080.

SN 86-180,384, FILED 1-30-2014.

ANNE E. GUSTASON, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

# Exhibit 3

# United States of America
## United States Patent and Trademark Office

# SmartShake

**Reg. No. 4,929,699**

**Registered Apr. 5, 2016**

**Int. Cl.: 21**

**TRADEMARK**

**PRINCIPAL REGISTER**

DEVPAT AB (SWEDEN JOINT-STOCK COMPANY)
FREJAGATAN 13A
SE-723 35 VÄSTERAS
SWEDEN

FOR: NON-ELECTRIC FOOD BLENDERS AND CONTAINERS FOR HOUSEHOLD PURPOSES; SHAKERS, BOTH INSULATED AND NON-INSULATED, FOR FOODSTUFFS, SOLD EMPTY; BOTTLES, BOTH INSULATED AND NON-INSULATED, FOR FOODSTUFFS, SOLD EMPTY; PLASTIC BOTTLES, SOLD EMPTY, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

THE MARK CONSISTS OF THE STYLIZED WORDING "SMART SHAKE" WITH "SMART" IN BLUE AND "SHAKE" IN BLACK.

PRIORITY DATE OF 7-9-2014 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 1248034 DATED 7-25-2014, EXPIRES 7-25-2024.

THE COLOR(S) BLUE AND BLACK IS/ARE CLAIMED AS A FEATURE OF THE MARK.

SER. NO. 79-165,589, FILED 7-25-2014.

SHANNON TWOHIG, EXAMINING ATTORNEY



*Michelle K. Lee*
Director of the United States
Patent and Trademark Office

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| USANA HEALTH SCIENCES, INC.,<br><br>Plaintiff,<br>v.<br><br>SMARTSHAKE US, INC., a Pennsylvania corporation; DEVPAT AB, a Swedish limited company; and MIKAEL NILSSON, an individual,<br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [19] MOTION TO DISMISS**<br><br>Case No. 2:17-cv-00139-DN<br><br>District Judge David Nuffer |

Defendants SmartShake US, Inc. ("SmartShake"), DevPat AB ("DevPat"), and Mikael Nilsson ("Nilsson"), collectively "Defendants," filed a Motion to Dismiss[1] Plaintiff USANA Health Sciences, Inc.'s ("USANA") Complaint.[2] In its Complaint, USANA seeks declaratory judgment that its USANA MYSMART mark does not infringe on DevPat's three SMARTSHAKE registered trademarks.[3] Additionally, USANA seeks declaratory judgment of invalidity and cancellation of the three SMARTSHAKE trademarks.[4]

In the Motion to Dismiss, Defendants argue that the Complaint should be dismissed in its entirety under Rule 12(b)(1) of the Federal Rules of Procedure due to lack of subject matter jurisdiction.[5] Alternately, Defendants argue that the Complaint against SmartShake and Nilsson

---

[1] Defendants' Motion to Dismiss ("Motion to Dismiss"), <u>docket no. 19</u>, filed April 17, 2017.

[2] <u>Docket no. 2</u>, filed February 24, 2017.

[3] Complaint at ¶¶ 16–18, 22–39.

[4] *Id.* at ¶¶ 40–48.

[5] Motion to Dismiss at 15–18.

should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[6]

After consideration of the written submissions of the parties, Defendants' Motion to Dismiss the Complaint in its entirety pursuant to Rule 12(b)(1) is GRANTED. Because this case is dismissed for a lack of subject matter jurisdiction, it is unnecessary to reach Defendants' 12(b)(6) arguments.

## TABLE OF CONTENTS

Background ............................................................................................................................ 2
Standard of Review .............................................................................................................. 6
Discussion ............................................................................................................................. 6
    There Is No Subject Matter Jurisdiction over USANA's Claims ..................................... 7
        USANA's Suit Is Not Based on an "Actual Controversy" ................................... 7
        USANA Engaged in Procedural Fencing ......................................................... 9
    USANA's Claim for Relief is Moot ......................................................................... 12
Order  ………………………………………………………………………………16

## BACKGROUND[7]

USANA is a Utah corporation that manufactures nutritional supplements, diet and energy products, personal care, and other healthcare products.[8] DevPat is a Swedish company that manufactures a line of drinking bottles, shakers, and food containers that it ships to and offers for sale in the United States under the SMARTSHAKE brand.[9] DevPat owns three trademarks in relation to its SMARTSHAKE mark.[10] SmartShake is a Pennsylvania corporation that acts as the

---

[6] Motion to Dismiss at 18–20.

[7] The allegations provided in this section were derived from USANA's Complaint and the parties' briefing and attached exhibits. *See* Standard of Review Section, *infra*.

[8] Complaint at ¶¶ 1, 10–11.

[9] Motion to Dismiss at 6–7.

[10] Complaint at ¶¶ 16–18.  In its complaint, USANA asserts that Nilsson is the owner of one of the trademarks. However, Defendants have provided sufficient evidence to show that Nilsson sold his interest in the trademark to DevPat in March, 2014. *See* Declaration of Stephen R. Barrese, Esq. in Support of Defendants' Motion to Dismiss ("Barrese Declaration"), ¶7 , docket no. 20, filed April 17, 2017; Barrese Declaration, Exhibit A, 4, 6, docket no. 20-1, filed April 17, 2017.

"U.S. arm" of DevPat.[11] Nilsson is a resident of Sweden who, according to USANA, is the founder of DevPat and SmartShake.[12]

Among its wide array of goods, USANA sells a line of protein shake products that it previously offered under a mark titled "MYSMARTSHAKE."[13] DevPat became aware of USANA's use of the MYSMARTSHAKE mark in June of 2016 when USANA's products were featured on *The Dr. Oz Show*.[14] Believing that USANA's MYSMARTSHAKE mark created consumer confusion with DevPat's SMARTSHAKE brand, DevPat sent two cease and desist letters to USANA in July and September of 2016.[15] In both letters, DevPat expressed its preference to "resolve this issue amicably, perhaps possibly based on a business relationship."[16] USANA responded to DevPat's letters in October of 2016 and likewise communicated its commitment to resolve the matter amicably.[17]

As a result, USANA and DevPat entered into negotiations.[18] On January 4, 2017, USANA communicated to DevPat that it was "working on changing labelling (packaging and published marketing) to make sure there is a clear distinction" between DevPat's and USANA's products.[19] On January 17, 2017, USANA sent DevPat its proposed repackaging, which DevPat

---

[11] Complaint at ¶ 3. Defendants deny this claim, however, they do not provide any clarifying information as to the relationship between DevPat and SmartShake. Motion to Dismiss at 19.

[12] Complaint at ¶ 4.

[13] Motion to Dismiss at 7.

[14] *Id.*; Barrese Declaration at ¶ 11.

[15] Plaintiff USANA Health Services, Inc.'s Memorandum in Opposition to Defendants' Motion to Dismiss ("Memorandum in Opposition"), Exhibit 6, docket no. 38-6, filed May 16, 2017; Memorandum in Opposition, Exhibit 7, docket no. 38-7, filed on May 16, 2018.

[16] Memorandum in Opposition, Exhibit 6 at 3; Memorandum in Opposition, Exhibit 7 at 2.

[17] Memorandum in Opposition, Exhibit 8, 3, docket no. 38-8, filed on May 16, 2017.

[18] Barrese Declaration at ¶ 14; Memorandum in Opposition at 4.

[19] Barrese Declaration, Exhibit H, docket no. 20-8, filed April 17, 2017.

accepted.[20] The proposed packaging displayed the USANA MYSMART label and no longer

utilized the MYSMARTSHAKE mark.[21] Following the agreement on USANA's revised

packaging, USANA and DevPat continued to negotiate additional settlement terms—including

what to do with USANA's remaining inventory that displayed the allegedly infringing

MYSMARTSHAKE mark.[22]

> On February 15, 2017, DevPat sent an email to USANA stating, in relevant part:

> I have not heard back from you on that or in weeks. I would appreciate a response as soon as possible. I think all parties would like to settle this amicably but if communication is cut off, *I have been given instructions to file an action in Federal court.*[23]

> Following this email, it appears that negotiation continued. Six days later, on February

21, 2017, USANA contacted DevPat inquiring whether and to what amount DevPat expected to

be compensated should USANA proceed to sell its remaining inventory that still carried the

MYSMARTSHAKE mark and whether DevPat would be willing to enter into a licensing

agreement.[24] The following day, on February 22, DevPat replied stating that given the size of the

remaining inventory, it did not believe that a seven figure number was unreasonable and that it

had not considered a licensing agreement because USANA had previously informed DevPat that

it was not interested in one.[25] On February 23, counsel for USANA replied: "I need to discuss

---

[20] Barrese Declaration at ¶¶ 16, 19–20; Barrese Declaration, Exhibit J, <u>docket no. 20-10</u>, filed on April 17, 2017.

[21] Barrese Declaration, Exhibit J.  USANA MySmart is a trademark that USANA had previously registered in 2015. *See* Memorandum in Opposition, Exhibit 1, <u>docket no. 38-1</u>, filed on May 16, 2017.

[22] *Id.* at ¶ 20; Barrese Declaration, Exhibit K, 3, <u>docket no. 20-11</u>, filed on April 17, 2017.

[23] Memorandum in Opposition, Exhibit 10, <u>docket no. 38-10</u>, filed on May 16, 2017 (emphasis added).

[24] Barrese Declaration, Exhibit 11, 3, <u>docket no. 20-11</u>, filed on April 17, 2017.

[25] *Id.*

this with our Executive team, but unfortunately, they are tied up in a VP retreat through tomorrow afternoon. I'll get back to you as soon as I can."[26]

USANA filed for declaratory relief in this case the next day on February 24, 2017.[27] In its Complaint, USANA sought declaratory judgment that the revised packaging that carried the USANA MYSMART mark does not infringe DevPat's three SMARTSHAKE trademarks.[28] Additionally, USANA sought declaratory judgement of invalidity and cancellation of DevPat's three SMARTSHAKE trademarks.[29] Other than in a headnote in the "factual background" section,[30] USANA made no mention of its prior use of the MYSMARTSHAKE mark or product inventory in its Complaint.

On April 20, 2017, DevPat sued USANA in the United States District Court for the Southern District of New York.[31] In its suit, DevPat asserted that USANA's use of the MYSMARTSHAKE mark infringed on DevPat's SMARTSHAKE trademarks.[32] DevPat explicitly stated in its Complaint that USANA's revised USANA MYSMART mark does not infringe upon DevPat's SMARTSHAKE mark.[33] Additionally, on May 29, 2017, DevPat executed a unilateral covenant not to sue over the USANA MYSMART mark.[34]

---

[26] *Id.*

[27] Complaint.

[28] Complaint at ¶¶ 16–18, 22–39.

[29] *Id.* at ¶¶ 40–48.

[30] *Id.* at 3.

[31] Memorandum in Opposition, Exhibit 9 ("S.D.N.Y. Complaint"), docket no. 38-9, filed May 16, 2017. Case No. 1:17-cv-02858-JGK.

[32] *Id.* at ¶¶ 46–51.

[33] *Id.* at ¶ 44.

[34] Reply Memorandum, Exhibit A ("Covenant "), docket no. 42-1, filed May 30, 2017.

## STANDARD OF REVIEW

Due to the limited scope of federal jurisdiction, federal courts do not presume jurisdiction.[35] Rather, the burden of proof falls upon the party asserting federal jurisdiction.[36] Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) generally take two forms.[37] A party may either (1) challenge the sufficiency of the complaint through a "facial attack on the complaint's allegations" or (2) "go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends."[38] The Defendants' current Motion falls into the latter category. The complaint's factual allegations are no longer presumed to be true and reference to evidence outside of the pleadings is appropriate.[39]

## DISCUSSION

Defendants assert that there is no subject matter jurisdiction over USANA's claims under the Declaratory Judgment Act.[40] Alternately, Defendants argue that USANA's case is moot due to the unilateral covenant not to sue over the USANA MYSMART trademark that DevPat executed on May 29, 2017.[41] Either ground provides a sufficient basis upon which to grant Defendants' Motion to Dismiss.

---

[35] *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) (quoting *Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999)).

[36] *Id.*

[37] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

[38] *Id.* at 1002–03.

[39] *Id.*

[40] Although Defendants do not explicitly refer to the Act, they do cite to cases that interpret the Act. *See* Motion to Dismiss at 11.

[41] Motion to Dismiss at 16 n.5; Reply Memorandum  in Support of Defendants' Motion to Dismiss ("Reply Memorandum"), 5–6, docket no. 42, filed May 30, 2017; Covenant at 2–3.

### There Is No Subject Matter Jurisdiction over USANA's Claims

The Declaratory Judgment Act states, in relevant part: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[42] As such, a plaintiff seeking declaratory judgment must meet two requirements. The plaintiff must first "present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement."[43] "Second, even where a constitutionally cognizable controversy exists, the Act stipulates only that the district courts "may"—not "must"—make a declaration on the merits of that controversy; accordingly . . . district courts are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority."[44] USANA's complaint does not present an actual controversy and this court's discretion is best exercised to decline to hear the case.

### USANA's Suit Is Not Based on an "Actual Controversy"

"A declaratory judgment 'controversy' . . . requires no greater showing than is required for Article III."[45] It must be (1) "definite and concrete, touching the legal relations of parties having adverse legal interests," (2) "real and substantial," and (3) "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[46] In other words, "the question in each case is

---

[42] 28 U.S.C. § 2201(a).

[43] *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008).

[44] *Id.*

[45] *Id.* at 1241.

[46] *Id.* at 1244 (quoting *MedImmune, Inc. v. Genetach, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted)).

whether the facts alleged, under the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[47]

USANA argues this standard is easily satisfied in the current case because DevPat not only threatened to file suit in federal court in an email sent on February 15, 2017, but has also since acted on that threat by filing an action in the Southern District of New York.[48] However, USANA fails to distinguish between the controversy arising from its use of the MYSMARTSHAKE mark and the lack of controversy about its use of the USANA MYSMART mark.

An actual controversy exists between the parties regarding USANA's use of the MYSMARTSHAKE mark. DevPat issued two cease and desist letters shortly after it became aware of USANA's use of the mark. Additionally, the threat to pursue litigation in federal court that USANA points to in the February 15 email was aimed towards USANA's use of the MYSMARTSHAKE mark, not the USANA MYSMART mark. DevPat sent the email after the parties had already agreed that USANA would cease using the MYSMARTSHAKE mark and replace it with the USANA MYSMART mark. At that point, the only thing left to be negotiated was how to treat USANA's inventory that still carried the allegedly infringing MYSMARTSHAKE mark. The email states that DevPat had not heard from USANA for some time and expressed its desire to still resolve the situation amicably, but also informed USANA that DevPat had given counsel permission to file suit in federal court if further communication was cut off.[49] Nothing indicates that DevPat made this alleged threat as a result of USANA's

---

[47] *Id.* (quoting *MedImmune*, 549 U.S. at 127).

[48] Memorandum in Opposition at 7–8.

[49] Memorandum in Opposition, Exhibit 10 at 2.

planned use of the USANA MYSMART mark. Rather, context suggests it was made in relation to the inventory that still carried the MYSMARTSHAKE brand.

Finally, the pending suit that DevPat initiated in the Southern District of New York further bolsters the conclusion that there is no "actual controversy" between the parties regarding the USANA MYSMART mark. DevPat's S.D.N.Y. Complaint alleges that USANA's MYSMARTSHAKE mark infringes on DevPat's SMARTSHAKE trademarks.[50] DevPat's Complaint explicitly states that the subject of USANA's Complaint, the USANA MYSMART mark, does not infringe on DevPat's trademarks: "the revised mark . . . does not infringe Plaintiff's MYSMARTSHAKE® Trademark. . . . [T]he "USANA MYSMART" mark was never alleged to be infringing, or threatened with suit, but to the contrary was approved for use by Plaintiff."[51] USANA has not countered this assertion. And now, DevPat has provided a covenant not to sue over the USANA MYSMART mark.

For these reasons, the parties do not have "adverse legal interests" concerning USANA's use of the USANA MYSMART mark on the packaging and marketing of its protein shake products. The parties appear to agree that the USANA MYSMART mark does not infringe DevPat's registered trademarks.

**USANA Engaged in Procedural Fencing**

Although a finding that a case lacks an "actual controversy" is sufficient to dismiss a complaint seeking declaratory relief,[52] USANA's Complaint would warrant dismissal even if the requisite controversy had been present.

---

[50] S.D.N.Y Complaint at ¶¶ 46–51.

[51] *Id.* at ¶ 44.

[52] *See Columbian Fin. Corp. v. Bancinsure, Inc.*, 650 F.3d 1372, 1385 (10th Cir. 2011) (finding that a district court lacked subject matter jurisdiction based on a lack of actual controversy between the parties).

"[T]he district court is not obliged to entertain every justiciable declaratory claim brought before it. The Supreme Court has long made clear that the Declaratory Judgment Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'"[53] In determining whether to hear a case seeking declaratory judgment, courts may consider a number of case-specific factors, including:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[54]

Assuming that USANA had presented an "actual controversy" surrounding the USANA MYSMART mark, the first, second, and fourth factors may have tilted in favor of USANA—however, this is speculative. Regardless, the third factor—which considers whether the plaintiff has engaged in "procedural fencing"—carries considerable weight in the current case.

*Buzas Baseball Inc. v. Bd. of Regents of Univ. Sys. of Georgia*[55]  is remarkably similar to the present case. In *Buzas*, an "actual controversy" existed between the parties regarding the plaintiff's use of the "Buzz" mark.[56] The parties had engaged in negotiations and at one point the plaintiff had agreed that it would discontinue using "Buzz" in its name and logo, and was leaning towards rebranding itself as "Beezz."[57] The defendant had presented plaintiff with a written

---

[53] *State Farm Fire & Gas Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (quoting *Pub. Affairs Assocs, Inc. v. Rickover*, 369 U.S. 111, 112 (1962).

[54] *Id.* at 983 (quoting *Allstate Ins. Co. v. Green*, 825 F,2d 1061, 1063 (6th Cir. 1987).

[55] 189 F.3d 477 (10th Cir. 1999).

[56] *Id.* at *1.

[57] *Id.*

settlement agreement to which plaintiff never responded.[58] Instead, plaintiff filed suit seeking declaratory judgment in Utah federal district court eleven days after receiving the written settlement proposal.[59] Defendant initiated a trademark infringement action in Georgia federal district court approximately three weeks later.[60]

The Utah district court dismissed plaintiff's declaratory judgment action, finding that plaintiff had filed the action in anticipation of the Georgia lawsuit and had never informed the defendant that its proposal was unacceptable.[61] The Tenth Circuit affirmed the district court's dismissal of the case, stating that "[a] district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction."[62]

As in *Buzas*, USANA and DevPat were still engaged in ongoing negotiations at the time that USANA initiated the present suit. USANA had already agreed to replace the MYSMARTSHAKE with the USANA MYSMART mark in the marketing and on the packaging of its protein shake products. At that point, all that was left to negotiate were details such as what was to be done with USANA's remaining inventory that carried the allegedly infringing mark. That issue is not raised in this case. There is also no indication that USANA informed DevPat that they had reached an impasse prior to seeking declaratory judgment. Furthermore, DevPat filed suit alleging trademark infringement by the MYSMARTSHAKE products in the Southern District of New York approximately two months later.

---

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.* at *2.

[62] *Id.* at *3.

USANA does point to the email that DevPat sent on February 15 to suggest that negotiations had broken down prior to it initiating the current action.[63] It is true that DevPat did state it might file suit in federal court if communication ceased between the parties.[64] However, this argument ignores the subsequent emails sent between the parties on February 21–23. The final communication that USANA sent February 23rd to DevPat prior to filing the present action on February 24th stated: "I need to discuss this with our Executive team, but unfortunately, they are tied up in a VP retreat through tomorrow afternoon. I'll get back to you as soon as I can."[65] This does not suggest that negotiations had broken down when USANA filed suit the following day. Under cover of waiting for a retreat to end, this case was filed.

USANA engaged in "procedural fencing" when it filed declaratory action. The third factor therefore weighs heavily in favor of the Defendants.

Additionally, the fifth factor also weighs heavily in favor of the Defendants. The disclaimer in the DevPat S.D.N.Y. Complaint of any claim against the USANA MYSMART mark, and the unilateral covenant not to sue that DevPat executed on May 29, 2017, have mooted the current action. This is discussed in further detail, *infra*.

For these reasons, Defendants' Motion to Dismiss would have been granted even if there was an "actual controversy" between the parties regarding the USANA MYSMART mark.

### USANA's Claim for Relief is Moot

Alternately, mootness forms another ground upon which Defendants' Motion to Dismiss may be granted.

---

[63] Memorandum in Opposition at 9.

[64] Memorandum in Opposition, Exhibit 10 at 2.

[65] Barrese Declaration, Exhibit K at 2.

"[A]n actual controversy must exist not only at the time the complaint is filed, but through all the stages of the litigation."[66] The doctrine of "[s]tanding concerns whether a plaintiff's action qualifies as a case or controversy when it is filed; [the doctrine of] mootness ensures it remains one at the time a court renders its decision. . . . Failure to satisfy the requirements of either doctrine places a dispute outside the reach of the federal courts."[67] Therefore, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiff's particular legal rights."[68]

A defendant may moot a case by voluntarily ceasing the challenged conduct, however, the defendant still "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur" before a court will declare the case to be moot.[69] Otherwise, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."[70] Where declaratory judgments are implicated, a defendant may sometimes meet this standard by executing a satisfactory covenant not to sue.[71]

In the present action, DevPat argues that even if USANA's Complaint presented an "actual controversy," the controversy was mooted by the unilateral Covenant Not to Sue

---

[66] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)).

[67] *Brown v. Buhman*, 822 F.3d 1151, 1163–64 (10th Cir. 2016).

[68] *Already*, 568 U.S. at 91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009))..

[69] *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

[70] *Id.*

[71] *Id.* at 94–95 ("The case is moot if the court, considering the covenant's language and the plaintiff's anticipated future activities, is satisfied that it is 'absolutely clear' that the allegedly unlawful activity cannot reasonably be expected to recur.").

("Covenant") that DevPat executed on May 29, 2017.[72] The Covenant includes a broad promise not to assert trademark infringement against USANA for its use of the USANA MYSMART mark:

> DevPat for and on behalf of itself, parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities, hereby unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against USANA or any of its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or related business entities and all customers of each of the foregoing (whether direct or indirect), on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law in the United States relating to the SMARTSHAKE® Trademark based on USANA's current and/or previous use of the USANA MYSMART mark in commerce before or after the Effective Date of this Covenant.[73]

This Covenant has features that are very similar to the covenant not to sue at issue in *Already, LLC v. Nike*,[74] which the Supreme Court held sufficiently met the standard to moot the action seeking declaratory judgment of trademark non-infringement.[75] Both covenants are "unconditional and irrevocable,"[76] prohibit the executing parties from making "any claim *or* demand"[77] implicating the challenged trademark, and reach beyond the party in the lawsuit to protect numerous associated entities such as its distributors and customers.[78]

---

[72] Motion to Dismiss at 16 n.6; Reply Memorandum at 4–6.

[73] Reply Memorandum, Exhibit A at 3.

[74] 568 U.S. 85 (2013).

[75] *Id.* at 94–95.

[76] *Id.* at 93.

[77] *Id.*

[78] *Id.*

14

Therefore, based on the Covenant, Defendants DevPat, SmartShake,[79] and Nilsson[80] cannot assert trademark infringement against USANA for its use of the USANA MYSMART mark now or in the future. This action no longer presents an "actual controversy" for purposes of Article III because "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[81]

---

[79] SmartShake, as "the U.S. arm of DevPat"—whatever that formal relationship might be— is covered by the Covenant's broad language which binds DevPat's "parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities." Covenant at 3.

[80] Defendants have provided strong evidence to suggest Nilsson no longer holds an enforceable interest in any of the three SMARTSHAKE trademarks. USANA has shown that Nilsson at one time owned United States Trademark Registration No. 4,199,080. *See* Complaint, Exhibit 1, docket no. 2-1, filed on February 24, 2017. However, Defendants have provided evidence that Nilsson sold whatever interest he did have in the aforementioned trademark to DevPat on March 12, 2014.  Barrese Declaration, Exhibit A, docket no. 20-1, filed on April 17, 2017. Regardless, although Nilsson's current relationship to DevPat is unclear, as DevPat's founder, he is covered by the Covenant's broad language which binds DevPat's "directors, officers, employees, agents, distributors, attorneys, representatives." Complaint at ¶ 4; Covenant at 3.

[81] *Already*, 568 U.S. at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

## ORDER

For the reasons stated herein, it is hereby ORDERED that Defendants' Motion to Dismiss[82] is GRANTED. USANA's First through Third claims for declaratory judgment on trademark non-infringement, in the Complaint,[83] are DISMISSED WITH PREJUDICE. USANA's Fourth through Sixth claims for trademark invalidity in the Complaint,[84] are DISMISSED WITHOUT PREJUDICE.[85]

Dated June 5, 2018.

BY THE COURT:

_David Nuffer_

David Nuffer
United States District Judge

---

[82] Docket no. 19, filed April 17, 2017.

[83] Docket no. 2, filed February 24, 2017.

[84] *Id.*

[85] Plaintiff's Fourth through Sixth claims for Declaratory Judgment of Invalidity and Cancellation of Trademark Nos. 4,199,080; 4,871,259; and 4,929,699 are invalidity claims which will be at issue in Case No. 1:17-cv-02858-JGK in the Southern District of New York.

# EXHIBIT 6

